In the Matter of William BOWEN, Jr.,
Bankrupt.

No. 39358.

United States District Court
N. D. Georgia,
Atlanta Division.

Aug. 12, 1963.

Cassandra Maxwell, Atlanta, Ga., Marie Leachman, Leachman, King & Thurman, Atlanta, Ga., for William Bowen, Jr.

Wotton, Long, Jones & Read, Atlanta, Ga., for Town Finance Corp. of Atlanta.

HOOPER, Chief Judge.

## ORDER

It appearing that on the 12th day of June, 1963, the special master appointed by this Court filed his report setting forth therein his findings of fact and conclusions of law; and it

Further appearing that within the time prescribed by law no objections were filed to said report; and it

Further appearing that William Bowen, Jr., bankrupt, is entitled to the relief sought in his original petition for restraining order; it is

Ordered and adjudged that the special master's report filed herein on the 12th day of June, 1963, be and the same is hereby adopted by this Court as the findings of fact and conclusions of law in this matter; and it is

Ordered and adjudged that Town Finance Corporation of Atlanta be and the same is hereby permanently restrained and enjoined from further proceedings in this matter against the bankrupt, William Bowen, Jr.

## STATEMENT OF THE CASE

The Report of Special Master J. Ellis Mundy follows:

William Bowen, Jr., filed in this Court his complaint alleging jurisdiction under Section 1334 of Title 28 U.S.C.A. because as a Court of Bankruptcy it has jurisdiction of bankruptcy proceedings and all matters pertaining thereto. Town Finance Corporation was named defendant.

The complaint states further that petitioner was adjudged a voluntary bankrupt on November 15, 1960; that Town Finance was named in schedule A–2 as a secured creditor; that upon information and belief that said creditor did not have the claimed lien by conditional sales contract upon the records of Fulton County, Georgia that there was doubt as to who had the proper claim to the property,— Town Finance or another creditor, Atlanta Postal Credit Union, and that the property was submitted to both creditors and they were urged to resolve the problem. No further action, it is alleged, was taken by the defendant in the Court of Bankruptcy.

The petition alleged further that defendant on January 4, 1962 caused gar-

nishment proceedings to be instituted against his employer upon a default judgment obtained at November term 1961 based upon a petition in trover claiming the Mercury automobile on the debt of $903.65, said suit having been filed in Civil Court of Fulton County on June 20, 1961; that petitioner traversed the service of said suit, alleging that he knew nothing of it until the garnishment was served upon his employer, Associated Cleaning Contractors Inc., and made motion to set aside judgment in trover suit and suspend garnishment proceedings; that upon adverse ruling, appeal was made to Court of Appeals of Georgia upon which a ruling adverse to petitioner was handed down.

It is alleged further by this petitioner that Town Finance Corporation harasses petitioner constantly and demands that his supervisor of personnel employer at the U. S. Post Office, and its officials, force petitioner out of a job unless he pays the debt, well knowing that the debt has been discharged in bankruptcy and that there has been no conversion of the automobile as alleged in said trover action, and that petitioner will lose his job, his seniority and his accumulated benefits.

The petition prayed for temporary restraining order restraining said defendant from seeking to collect said debt, from processing said judgment, from going about petitioner's home and place of employment and from bothering his employers and from carrying out any act or proceeding pursuant to said garnishment suit. Preliminary and final injunction against all such acts is likewise prayed.

Temporary restraint and show cause order was entered upon said petition on January 22, 1963 by Honorable Frank A. Hooper, Judge United States District Court, show cause hearing being assigned for February 8, 1963.

Answer was timely filed by the defendant in which it denies that this Court has jurisdiction of this complaint; while admitting the bankruptcy proceeding and a discharge granted on April 3, 1961 and that it was named as a creditor it is denied that it was otherwise a party to the proceeding. It contends it has a bill of sale to secure debt to a certain Mercury automobile executed by petitioner under which it claims title to same, copy of which the respondent attaches.

The respondent admitted the allegations of petitioner with respect to all the court proceedings and actions instituted by it and with respect to the motions and appeal taken by petitioner. A copy of the trover petition is attached to the answer.

The allegations of harassment and effort to force petitioner out of his job were denied, it being stated that respondent's counsel wrote one letter to the Postmaster of Atlanta requesting that Bowen be approached concerning his taking care of his judgment.

By further answer defendant averred that it made demand upon petitioner for the property described in the bill of sale and upon demand being refused filed the petition in trover and that petitioner was served with same but did not set forth in said court any plea showing a discharge in bankruptcy; that upon refusal to turn over the said property and upon presentation of sworn testimony a money judgment in lieu of said property was entered against petitioner.

Respondent by its answer contends further that since petitioner was legally served with said suit and set forth no defensive plea of a discharge in bankruptcy, that he is precluded by the judgment of said court, and same is res adjudicata, and that this Court is without jurisdiction of the subject matter of this complaint, and said complaint fails to state a claim upon which relief can be granted.

Finally the answer contends that at the time of filing said trover action, respondent was entitled to possession of said automobile, and that the money judgment is a valid judgment not based upon any debt discharged in bankruptcy, and said judgment is final and conclusive upon petitioner.

By amendment later filed respondent further alleged that petitioner is not entitled to come into court and ask for equitable relief when he himself has not done and is not doing equity and is not coming into court with clean hands.

On February 8, 1963 by order of Judge Frank A. Hooper this matter was referred to one of the Referees in Bankruptcy of this Court "to hear said matter and to make a report to this Court as to all issues of fact and questions of law. And upon receiving said report, this Court will make a final determination as to plaintiff's prayers for injunction. * * * "

Pursuant to such order the undersigned Referee assigned hearing on the matter after due notice to all parties. The hearing was duly and completely held, the same being reported and transcript, as well as the record in the case and all documentary evidence, is available and of file.

### FINDINGS OF FACT

There seems to be little, if any, issue between the parties in this matter concerning the relevant facts which are necessary for a determination of the question involved. The Referee as Special Master finds such facts to be as follows:

Bowen had had prior financial transaction with Atlanta Postal Credit Union but on December 8, 1958 executed note for $4,000.00 with some 15 co-signers and pledging as collateral security a 1955 Mercury automobile. This note was never recorded. From the proceeds of this loan made to him the sum of $742.00 was paid to Town Finance. (R50)

Four days later on December 12, 1958 debtor executed his note, loan statement and bill of sale for a loan of $204.00 to Town Finance Corp. The bill of sale includes as security the same 1955 Mercury automobile. This instrument was recorded. Successively thereafter additional loans were made in increasing amounts until a final loan with which we are here concerned was made on June 27, 1960 in the amount of $954.00 (remaining balance $903.65). This note retained as security the same automobile but was not put of record. (R88)

Bowen meanwhile continued his loan relationship with the Atlanta Postal Credit Union until a renewal of same was made on February 27, 1961. The automobile was omitted from the renewed obligation. This vehicle had been relinquished to the debtor some time in the early part of 1961 when money was needed by the borrower for alimony payments and had applied to the Postal Credit Union for additional loan. Being unwilling to increase his loan and considering the car of small value as compared to the size of his loan an agent of the credit union was directed to sell the car for Bowen and give him most of the money in order to keep him out of jail.

During this period of Bowen's dealings with these two creditors the ledger cards of the two companies indicate certain communications or inquiries between them. (Ex B5,R81) Each undoubtedly had knowledge of the existence of his debt to the other. Whether each creditor had early knowledge of the others bill of sale on the car is not too clear. Bowen testified that he told Town of Postal's claim on it. Town's representatives disclaimed such knowledge. Apparently both creditors attached little, if any, import to the car as security. It is noted that the loan statement of Town Finance (R5) dated January 23, 1959 contains notation in upper right space "2nd auto", whether this refers to a second loan on this auto refers to another car or it means the security on the auto is second is not manifest. It is notable that with the successive loans made by Bowen the principle of the debt increased from the original amount of $204.00 to the final sum of $903.65 without the addition of additional security. (Ex R3, 4, 5, 6, 7) The several letters from Town Finance to the Post Master concerning Bowen's indebtedness did not mention the automobile.

During the period of these financial involvements Bowen's bankruptcy pro-

ceeding intervened, a voluntary petition having been filed on November 15, 1960. The first meeting of creditors was held on December 14, 1960 with no creditor attending according to docket entry. Town Finance admittedly had notice of these proceedings (R116). Among the secured creditors shown in his A–2 schedule were: Atlanta Postal Credit Union 12/8/58, 1955 Mercury—$3215.; Atlanta Postal Credit Union 8/2/56, real estate, $3865.; Town Finance, 1955 Mercury, 6/27/60—$903.65. There were also other secured creditors listed, the total of the listed secured debts being $9871.91: unsecured debts in the total sum of $435.41. Assets were scheduled as: real estate $750.00,—title in name of mother,—and 1955 Mercury $50.00. Equity in all of this property was claimed as exempt and exemption was allowed in same. On April 3, 1961 a general discharge was granted to Bowen, no objection having been filed to same after statutory 30 day notice to all creditors.

After discharge and on June 20, 1961 Town Finance filed its action in trover based upon the bill of sale dated June 27, 1960 for the 1955 Mercury, the value alleged being $903.65. After considerable delay in effecting service and several extension orders an entry of service was made by a Deputy Marshall that Bowen had been served by leaving a copy at his most notorious place of abode by delivering same to an adult inmate domiciled at said place. Based upon same a default elected money judgment in the sum of $903.65 was entered in the Civil Court of Fulton County on November 28, 1961.

Subsequently on March 2nd, 1962 Bowen filed motion to set aside the judgment and traversing the service in said case. Upon hearing on March 15, 1962 the motion and traverse were denied. From this order appeal was taken which subsequently was decided adversely to debtor. (106 Ga.App. 326, 126 S.E.2d 803.)

Garnishment followed the trover judgment in early January, 1962 and five harassing letters to the Post Master of the Atlanta Post Office, where debtor was employed, were written on or about January 12, 1962, February 6, 1962, February 22, 1962, October 31, 1962 and November 26, 1962. The instant petition for restraint was filed on January 23, 1963.

## CONCLUSIONS OF LAW

The issue in this case is whether or not this court should exercise its equitable powers to enjoin the enforcement of the elected money judgment secured by respondent in a trover action in a state court.

When the need exists, the power to determine the dischargeability of the debt in question and grant relief is found in Sec. 2, sub. a (15) of the Bankruptcy Act.

"2a The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act * * * to * * * (15) make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act * * *."

It is true that the bankruptcy court does not have general powers to determine the dischargeability of claims and, if necessary, to enjoin their enforcement elsewhere, but the fact remains however that federal courts have the power to enforce its own decrees and to the extent of the use of ancillary jurisdiction. (Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230.)

The bankrupt in this case contended that he was not served with copy and processes in respondents trover suit. In this respect he filed traverse of service in the case which was decided adversely to him. An appeal from this ruling was also adverse. Although this result is no doubt in effect a finality that bankrupt

was served with copy of the trover action, it is not, we think, a determination of such negligence on his part as to bar his equitable rights to an injunction.

Granting that bankrupt had ample notice and time to file and assert any and all defensive measures at his command it is apparent that they would have been to no avail under the holdings of the appellate courts of Georgia in its holdings in cases other than in Crystal Laundry & Cleaners, Inc. v. Continental Finance & Loan Co., 97 Ga.App. 823, 104 S.E.2d 654.

Town Finance in this case made no effort to regain its claimed security either before the bankruptcy or during the pendency of these proceedings. It filed no reclamation proceedings nor application to foreclose. No objection to discharge was filed. It did not react or bargain in response to letter proposal of debtor's counsel to sell the car and divide the proceeds between the two secured creditors. It is doubtful if respondent had security other than on paper only, in view of the pre-existing paper in favor of the Postal Credit Union concerning which there is evidence that Town had notice. The debt in favor of Postal was obviously far in excess of the value of the car. If it had security value, it did not utilize it.

Respondent held its action until after discharge when it filed its trover action resulting in its elected money judgment. Then followed its letter writing procedures to the Post Master to collect its debt by pressure upon his employer and also by garnishment which precipitated this instant action.

Its legal maneuvers in this case we think were obviously made solely for the purpose and with the intent to circumvent the effect of a discharge in bankruptcy. To allow a money judgment obtained by a trover action in such a situation to be immune from the effects of a general discharge in bankruptcy of all scheduled debts would be, as Chief Judge Felton expressed in the Crystal Laundry case, supra, "contrary to the letter and spirit of the bankruptcy law as announced and applied in the Davis case". (Davis v.

Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393; citing also Remington on Bankruptcy, Vol. 7, p. 816, note 79 with respect to dissent of Mr. Justice Atkinson in Citizens' Bank v. Mullis, 161 Ga. 371, 131 S.E. 44) as Judge Felton further points up "There is nothing sacred about a trover action".

If there was conversion by bankrupt of the secured property, such conversion can not by any application of the evidence be interpreted as a wilful and malicious conversion so as to place it in one of the excepted provisions of Section 17 of the Act.

Analogy may here be drawn between the holdings of the Supreme Court of Illinois concerning the creation of a lien on future wages not being invalidated by the assignor's discharge in bankruptcy which was the subject matter of consideration the Local Loan Co. v. Hunt case, supra, and the present case at bar where the appellate courts of Georgia have held,—other than in the Crystal Laundry case,—that an elected money judgment in a trover action can survive a bankrupt's discharge.

In pointing up the necessity for its exercise of jurisdiction in the Local Loan v. Hunt case the Court said: (P. 244 of 292 U. S., p. 699 of 54 S.Ct., 78 L.Ed. 1230)

"One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' Williams v. U. S. Fidelity & G. Co., 236 U.S. 549, 554–555 [35 S.Ct. 289, 59 L.Ed. 713]. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement

of preexisting debt. Stellwagen v. Clum, 245 U.S. 605, 617 [38 S.Ct. 215, 62 L.Ed. 507]; and other cited cases. The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. Local rules subversive of that result cannot be accepted as controlling the action of a federal court.

"When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as, if not more than, it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either. The amount of the indebtedness, or the proportion of wages assigned, may here be small, but the principle, once established, will equally apply where both are very great. The new opportunity in life and the clear field for future effort, which it is the purpose of the bankruptcy act to afford the emancipated debtor, would be of little value to the wage earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy. Confining our determination to the case in hand, and leaving prospective liens upon other forms of acquisitions to be dealt with as they may arise, we reject the Illinois decisions as to the effect of an assignment of wages earned after bankruptcy as being destructive of the purpose and spirit of the bankruptcy act."

■ It is believed this principle is applicable in this case and that the issue should be met head-on, an elected money trover judgment such as this, obtained by a scheduled creditor after bankruptcy, where there was no wilful and malicious conversion, to be construed as not discharged by his discharge, is to allow a process subversive and destructive of the purpose and spirit of the Bankruptcy Act.

Whereupon, it appearing that necessity for equitable relief and restraint exists, respondent's motion to dismiss is denied and it is recommended that the temporary restraint heretofore entered be continued and made permanent. There are certain costs for reporting and transcripts thereof and perhaps some other costs which have been incurred. Under the circumstances of this case it is recommended that this cost be taxed one-half each against the two parties here involved.