41195. STATE HIGHWAY DEPARTMENT v. W. L. COBB CONSTRUCTION COMPANY.

824

ARGUED MARCH 15, 1965—DECIDED MAY 27, 1965—REHEARING
DENIED JUNE 14, 1965.

*Eugene Cook, Attorney General, Richard L. Chambers, E. J. Summerour, Assistant Attorneys General, Robert S. Lanier, Deputy Assistant Attorney General,* for plaintiff in error.

*Arnall, Golden & Gregory, H. Fred Gober, Allen & Edenfield, Francis W. Allen, Weekes & Candler, John Wesley Weekes,* contra.

RUSSELL, Judge. ■ The State Highway Department first takes the position on demurrer that a State is never suable except by its consent, *Thweatt v. State,* 66 Ga. 673, and that therefore it, as an arm of State government, cannot be sued on this contract without its consent. *Code* § 95-1505 provides: "The Highway Department may sue and be sued and may make settlement of all claims presented to it under oath." In 81 CJS! 1114, States, § 124, citing *Regents of Univ. System v. Blanton,* 49 Ga. App. 602 (176 SE 673) and *Regents of Univ. System v. Woodward,* 49 Ga. App. 608 (176 SE 677) it is stated: "The state, in entering into contracts, lays aside some of its attributes of a sovereign, and is bound to observe the same rule of conduct in performance of its contractual relations with its citizens as it requires them to observe. The state, like an individual, is liable for its breach of contracts, although, in the absence of a statute authorizing suits against the state, the contractor cannot enforce performance or recover damages." That the State Highway Department is subject to be sued on its contracts see also *State Hwy. Dept. v. MacDougald Constr. Co.,* 54 Ga. App. 310 (1) (187 SE 734); *Perkerson v. State Hwy. Bd.,* 56 Ga. App. 316 (192 SE 475); *State Hwy. Dept. v. Marsh,* 214 Ga. 693 (107 SE2d 179). This ground of demurrer is without merit.

■ ■ The contract in question here is substantially the same as others dealt with in *State Hwy. Dept. v. Wright Contracting Co.,* 107 Ga. App. 758 (131 SE2d 808) and *State Hwy. Dept. v. MacDougald Constr. Co.,* 102 Ga. App. 254 (115 SE2d 863). As to such contracts, which contain provisions for arbitration, provisions for decisions by the engineer, and provisions that such decisions shall be final, it was held in *State Hwy. Dept. v. MacDougald Constr. Co.,* 189 Ga. 490 (6 SE2d 570) that such

decisions, although erroneous, are binding on the parties in the absence of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment. The plaintiff under these criteria alleged by amendment that the defendant, through its engineers at the site, was guilty of such fraud and gross mistake as would imply bad faith and a failure to exercise a fair and honest judgment in that after it became apparent that the failures in proof-rolling the subbase were due to a faulty design it failed and refused over a period of months to make any effort to correct the design, required plaintiff to proof-roll over and over again, and repeatedly to dig out the subgrade, turn it over to dry it out and then replace it after it was obvious that until the design was corrected such methods were useless; failed and refused to keep records of the repair work for which plaintiff was entitled to be paid and urged the failure to keep records as a reason for nonpayment; after a decision was made to pay plaintiff for certain types of work for a given period of time it then continued to refuse to measure and repay the palintiff for the same type of repair work thereafter; inaccurately reconstructed records after having refused to keep them in the first instance, and in bad faith required the plaintiff to adhere to an inadequate and erroneous design. The plaintiff alleged an indebtedness under the contract of $207,645.50. This included $47,910.25 for unclassified excavation at a bid unit price per cubic yard under § 121.08 of the Standard Specifications allowing such compensation as an item of repairs; to which the defendant demurred on the ground plaintiff did not allege the unclassified excavation had been measured for payment as required by § 121.07 or that the repairs were authorized by the engineer as required by § 121.05 (a) stating that "all depressions and weak spots discovered as a result of the rolling shall be satisfactorily repaired. The repairs may consist of the removal and replacement of materials or bringing in new materials, or both, and the engineer will decide what repairs are to be made." Section 121 deals generally with subgrade compaction, and § 121.07 provides that as to repairs after proof-rolling, "all materials removed under this specification regardless of their nature will be measured for payment as unclassified excavation. If certain materials are laid aside or

stockpiled and later used again, their excavation from the stock-pile and placement in the roadbed will also be measured for payment as unclassified excavation." Section 121.02 provides for testing for subgrade compaction with a 35-ton roller and § 121.03 provides that "the surface to be rolled shall be ma-chined at the proper grade and cross section before it is rolled. It shall be at or near optimum moisture content."

The general demurrer to paragraph 6 and the general grounds of the motion for a new trial relating to this item of damages respectively urge that the plaintiff is not entitled to recover because of its failure to allege in the first instance and prove in the second that certain conditions precedent were complied with, these being in particular that after the plaintiff laid and compacted the subbase, and the engineers for the State Highway Department observed failure on the test runs with the 35-ton roller, they did not measure for payment the excavation which was subsequently done in digging up subbase, turning it over to dry, and then replacing it. There are two arguments here. The contention that it is not alleged the highway engineers meas-ured the excavation for payment is no defense in view of the fact that the plaintiff pleads this very act as one of bad faith or gross mistake on the part of the defendant, by reason of which the engineer's decision not to pay does not have the finality to which it would otherwise be entitled. The law does not entitle one to profit by his own wrong. *Code* § 20-1104 provides: "If the nonperformance is caused by the act or fault of the opposite party, that excuses the other party from per-formance." Failure to allege performance of a condition pre-cedent to recovery is not ground for a general demurrer where it appears from the allegations of the petition that the perform-ance of the condition precedent was made impossible by the acts of the defendant. *McCoy v. Scarbrough*, 73 Ga. App. 519 (2) (37 SE2d 221). Secondly, the same sort of circular reason-ing appears in the contention that the specifications demand proof-rolling at "optimum moisture content"; that the plaintiff alleges the subbase was too wet, and therefore the plaintiff cannot recover because it has not rolled at optimum moisture content. The plaintiff, however, further contends that the faulty design of the highway which placed it too close to a high water

table made it impossible to dry out the subgrade so that it would stand up under proof-rolling, and it appears from the petition as amended that there was no way to achieve a moisture content which would stand up until the design was corrected; it is the actual fact of failure to correct the design so as to allow the plaintiff to perform this part of the contract over a period of months and after the fact was apparent to all parties which is alleged as a fraud or gross mistake on the part of the defendant permitting the plaintiff to bring this action, "since it was obvious that the continued digging out, turning over, drying out and rolling the subbase as insistently required by the said Haney, Resident Engineer, as aforesaid was not, could not, and did not correct or cure the inadequate, erroneous and faulty design of the project." (Petition, paragraph 20). As to the cubic yards of unclassified excavation sued for, § 4.03(c) of the Standard Specifications provides that since quantities of excavation cannot be conveniently determined accurately until after the work is in progress, any increase or decrease in these quantities, whatever the amount, will be considered normal overruns. In construing the general demurrer to paragraph 6, and holding it insufficient, we must, of course, also consider the particularly pleaded facts in the remainder of the petition which have a bearing on this issue. *Douglas v. McNabb Realty Co.*, 78 Ga. App. 845 (2) (52 SE2d 550). The same reasons apply as against the demurrers to paragraph 10 seeking damages for the extra cost of maintaining equipment on the job due to the defendant's delay in correcting the road design, to paragraph 11 seeking extra labor costs from the same source, and to paragraph 14 referring to overhead costs. Paragraphs 9, 12 and 13 were eliminated by amendment, paragraph 7 contains an item of indebtedness stipulated to be due, and these demurrers are accordingly moot. As to the others, the statements in *State Hwy. Dept. v. Wright Contracting Co.*, 107 Ga. App. 758, supra, that a claim for damages because the defendant failed to anticipate subsurface conditions in the preparation of the plans and specifications will not lie where the decision of the highway engineer on such question is final, and the engineer has authority under § 8.07 of the Standard Specifications to suspend work, apply where the elements of fraud or gross mistake are not

present. The petition here makes a jury question on the issue of whether the damage resulting from continued wetness which was the cause of proof-rolling failures was a liability of the plaintiff or the defendant.

Paragraph 8 alleges that defendant is indebted to the plaintiff under the contract in the sum of $461.87 for clearing and grubbing wet areas. The petition with the exhibits annexed thereto by stipulation shows that the plaintiff bid $8,000 for all clearing and grubbing as a single pay item, but it does not show on its face that the defendant has paid it this sum for this purpose. Accordingly, this paragraph is also good as against demurrer.

The plaintiff in error filed a motion for diminution of record involving certain documents which were by stipulation made a part of the plaintiff's petition in this case. The motion is denied for the reason that plaintiff in error, had it seen fit, might have specified such documents as a part of the record in the bill of exceptions, which, however, was not done. The defendant in error is not harmed by this ruling for the reason that the petition, even without the addenda, is not subject to the demurrers interposed. Since those parts of the contract (including the contract itself, the proposal, bond, Standard Specifications, Vol. 1, plans, etc.) which the parties desired to place before the jury were introduced in evidence, and the record shows that the material referred to in the motion for diminution was not, it is not necessary to be considered by this court in ruling on the motion for a new trial. We are not confronted with the same situation as in *Sikes v. Norman*, 122 Ga. 387 (50 SE 134) where assignments of error could not be considered for the reason that the motion for new trial had not been made part of the record, nor with that in *Continental Finance &c. Co. v. Crystal Laundry &c., Inc.*, 214 Ga. 528 (105 SE2d 727) where a defense was erroneously considered because, although the issue was made by the pleadings, it was not supported by evidence.

The court charged the jury that the contract, having been prepared by the State Highway Department, should be construed most strongly against it, and this instruction is assigned as error on the ground that, under *California Ins. Co. v. Blum-*

*burg,* 101 Ga. App. 587, 591 (115 SE2d 266), it is error for the judge to submit the construction of a contract to a jury rather than himself construing it except in cases of ambiguities regarding matters of fact. The rule of course is taken from *Code* § 20-701. Since the standard specifications were by stipulation made a part of the contract, and since the evidence shows that as applied to fact situations existing during the course of the construction various items contained in these stipulations were variously interpreted, not only as between the plaintiff and defendant, but also as between certain of the defendant's engineers, we think the instruction warranted by the evidence. Shadburn, the State Highway Engineer, testified at one time: "And there is another thing that a specification does. A specification is supposed to be used as a guide in building a road and you can't always interpret it literally in every instance." Again, Fain, a State Highway Department division engineer, was cross examined over an alleged difference of opinion between himself and Haney, a resident engineer, as to whether "unclassified excavation" was payable where, after proof-rolling failure, dirt was taken out, dried, and replaced, for both the excavation and replacement or for only one of these operations, and Fain replied: "He didn't express any difference of opinion, although I have realized that Mr. Haney, if he had realized that moving the materials to dry was a pay item, I'm sure he would have kept records. It was a matter, I think, of interpreting the words in the book . . ." These examples sufficiently show that questions of fact arose in interpreting the specifications under which the work was done and which were an essential part of the contract between the parties. Additionally, the defendant recognized the fact when it requested and procured the court to give in charge to the jury an instruction containing the language: "I charge you that the section of the contract which I have just read you is but one provision of the entire contract *that must be construed in connection with* other provisions of the same section." (Emphasis added). A party litigant cannot complain of an instruction which he has procured (*Southern Nitrogen Co. v. Manuel,* 110 Ga. App. 597, 139 SE2d 453) nor can the defendant, having procured an instruction that the jury is to construe certain terms of the contract, complain

that the court properly instructs them as to the rules applicable in doing so. That the charge was a correct principle of law see *State Hwy. Dept. v. Wright Contracting Co.*, 107 Ga. App. 758, supra. The instruction was not error, and this ruling applies equally to the other excerpts from the charge which are contended to have been erroneous for the same reason.

■ Special ground 2 assigns error on an instruction that "with respect to any claimed item of damages which you should find to be extra work under the terms of the contract, the defendant cannot defend against extra work on the ground there was no written agreement because the defendant was under a duty to obtain a written agreement for extra work." "Extra Work" is defined in the specifications as "work or materials considered necessary for the proper completion of the improvements, unforeseen when the plans and specifications were prepared, for which no unit price is provided in the proposal." Section 9.05 of the Specifications provides that when ordered and accepted extra work "will be authorized by an extra work order or by a supplemental agreement," and may be paid for by lump sum, unit price, or force account. In *Wright*, supra, unclassified excavation was held to be "extra work" and the principle of law here charged was laid down (p. 764). In the present case Shadburn, the defendant's engineer, was questioned about "extra work" and stated that it was "extra work that is not set up in the contract . . . the amount cannot be determined ahead of time . . . you will have, regardless of the amount, normal overruns and underruns . . . extra work would include pay items under this definition extra work . . . the way this thing reads it says it's 'for which no unit price is provided in the proposal.' But you also have extra work under the first part of that sentence where it says 'work or materials considered necessary for the proper completion of the improvement, unforeseen when the plans and specifications were prepared.'" Asked whether this was not restricted to situations where no unit price is provided in the proposal, the witness agreed that was true where no unit price is provided and countered, "But on the other hand, were the quantities for doing this provided for in the plans?" It appears that both this witness and the opinion in *Wright* go beyond the strict definition in the

specifications, but under the evidence where the jury would normally interpret the words *extra work* in the usual sense rather than as words of art, the charge was not error. Section 4.04 by reason of which the instruction is contended to be error (the section requiring a supplemental agreement) was specifically stated in *Wright* not to be a ground of defense. No error is shown here.

■ The statement that tacit recognition by the defendant that the contractor has complied with his obligations is evidence of compliance is also a correct statement of law. *Porter v. Wilder & Son*, 62 Ga. 520, 526. Shadburn was asked, in regard to the proof-rolling, whether if State Highway engineers were standing by on the job on each side of the roller (as previous evidence had shown to be a fact) checking to see whether or not a depression in the subgrade occurred, that would be construed as their approval of test-rolling at that time. He answered, "Chances are it would be approval." The defendant's argument based on the contention that there is no evidence to authorize this instruction goes back to its assumptions (1) that proof-rolling could only occur when the subgrade was at "optimum moisture content" and that, if it occurred otherwise, and at a time when the subgrade material was too wet to withstand the proof-rolling, this was not a compliance with the contract, because (2) if it was done without authorization of the State Highway engineers it was not a compliance, and if done with their authorization or under their direction, then they had no authority to authorize proof-rolling unless the subgrade was at optimum moisture content and the proof-rolling which was actually done, together with the subsequent excavation and replacing of dirt on which a substantial part of this claim is predicated, was not a compliance with the contract because of the lack of authority of the engineers to direct such a procedure. This is of course the very procedure which the plaintiff also claims was followed by the engineers as agents of the defendant either in bad faith or by reason of gross mistake on their part. Both parties seem to consider this portion of the charge directed to this problem, and the only way under the circumstances to hold the charge error is by finding the authorization of State Highway engineers to proof-roll the base (a procedure called

for under the contract under § 121) so far beyond their authority as to be a complete nullity, and not binding on the Department. Since the purpose of such soil compaction was to ascertain whether or not the roadbed was ready for the next step in the construction of the highway and since nothing further could be done until the test was made, this approach is not realistic. The engineers had authority to direct that the tests be made.

■ The court instructed the jury, as complained of in special grounds 3, 5 and 6, as follows: "W. L. Cobb Construction Company is not accountable for unsatisfactory results if the terms of the contract were complied with as to materials and the manner of doing the work . . . [I]f you should find that the defendant failed to measure the unclassified excavation done by the palintiff, the plaintiff would still be entitled to recover for such amount of unclassified excavation as you should find from the evidence that W. L. Cobb Construction Company did under the contract . . . [T]here is an implied warranty that the plans, specifications, and design of the State Highway Department of Georgia were adequate and the State Highway Department would be responsible to W. L. Cobb Construction Company for any damages resulting from the inadequate design of the defendant, if you should find that as a matter of fact the design was inadequate."

In considering these exceptions, an analysis of the charge as a whole shows that the trial judge correctly considered the case an action for breach of contract, and that at the conclusion of the instructions he also correctly recognized that under the Standard Specifications, Vol. 1, § 5.01(a) and the ruling in *State Hwy. Dept. v. MacDougald Constr. Co.*, 189 Ga. 490, supra, the decision of the State Highway Engineer would be final in the absence of fraud or such gross mistake as would necessarily imply bad faith or failure to exercise an honest judgment. The charge runs to some 22 pages, and the error lies in the fact that while the court did, in the last analysis, instruct the jury that the plaintiff could not recover unless the decisions of the engineers were so erroneous as to imply dishonesty, he also instructed them unequivocally that the plaintiff could recover merely on proof that (a) the defendant failed to measure the materials

excavated or (b) on proof satisfactory to them that the design was inadequate. Neither of these facts alone nor both taken together would authorize a recovery unless and until the cloak of finality with which the Department swathed itself under the contract provisions relating to engineering decisions was first stripped from it. These two ingredients of the plaintiff's case, the breach of contract and the proof of fraud which was a condition precedent to bringing the suit, were never coupled in the presentation of law to the jury, in such manner that they could properly understand that both were necessary before a verdict for the plaintiff could be reached. Ground 3 assigns error because under the charge first above quoted the jury would be authorized to find a verdict for the plaintiff in direct conflict with § 5.01 of the specifications, supra; ground 5 as being in conflict with the provision of § 121.05 that the decision as to what repairs are to be made is left to the engineer, and ground 6 because the charge is not adjusted to the pleadings and evidence as well as because it is in conflict with § 5.01. A charge which contains two distinct propositions conflicting with one another and calculated to leave the jury in confusion requires a grant of a new trial. *Morris v. Warlick*, 118 Ga. 421 (2) (45 SE 407); *Pelham Mfg. Co. v. Powell*, 6 Ga. App. 308 (4) (64 SE 1116); *Citizens &c. Nat. Bank v. Kontz*, 185 Ga. 131, 146 (194 SE 536). If the instruction given would reasonably tend to confuse the jury as to the real issue in the case, a new trial should be granted. *Christopher v. Mooty*, 155 Ga. 286 (1) (117 SE 90). The court here unequivocally told the jury the plaintiff could not recover in the absence of fraud, but equally unequivocally in an entirely separate portion of instruction told them a recovery might be had either for a breach of implied warranty or for failure on the part of the defendant to pay for whatever part of the unclassified excavation the jury should find had been done under the contract. The instructions were contradictory and confusing, and were not corrected elsewhere in the charge. As to special grounds 3, 5 and 6, the trial court erred in denying the motion for a new trial.

■ In paragraph 6 of the petition the plaintiff alleged that it had removed 169,048.24 cubic yards of unclassified excavation and had been paid for moving 39,561.10 yards, leaving a balance

due on this item of $47,910.25. The defendant denied this indebtedness in its answer by alleging that 46,845.24 cubic yards of unclassified excavation came under authorized repairs measured as provided by Specifications § 121.07 and had been paid for, and that as to the remainder they were not authorized or directed by the defendant and were accordingly not measured for payment and the defendant is not indebted for them. The court charged: "If you find that the plaintiff was only paid for 46,845.24 cubic yards, and was not paid for 122,203 cubic yards, of unclassified excavation, you could find that this was a gross and palpable mistake of such magnitude as to authorize you to find for the plaintiff in such amount not in excess of $45,215.12 as you should find the plaintiff entitled to under the evidence presented to you in this case." It is obvious that the primary contention is not whether or not the plaintiff did the excavating but whether it did it in such manner as to be entitled to reimbursement for it, and the plaintiff's case is based in part on the premises that this extra work was caused by the inadequate design and by the defendant's requirement of repeated proof-rolling combined with its failure to correct the design, and that all of this conduct was such fraud or gross mistake as to permit it to get out from under the finality of the engineer's decision. In Wilson v. Buchanan County, 318 Mo. 64 (298 SW 842), a highway contractor alleged that he had moved 82,000 yards of earth and had been paid for only 32,717.8 yards. The court held: "There is no testimony that there was any actually corrupt or wilful purpose to wrong the plaintiff; nevertheless, there is the question whether a mistake was made, and whether that mistake was so gross as to constitute a fraud upon the rights of the plaintiff. If, as certain evidence favorable to plaintiff tended to show, there was 80,000 cubic yards of earth moved, under the contract, then the final estimate of only 32,717.8 yards . . . was discrepancy of such magnitude as must be deemed a gross mistake, and amounting in law to a fraud upon the plaintiff." It is true, however, that unless the jury found the "gross and palpable mistake" to be the equivalent of fraud it would not be authorized to find for the plaintiff merely because of a discrepancy in amounts, and to this extent the instruction is subject to the criticism urged. Since the case is being

tried again it is not necessary to decide whether this omission alone would constitute reversible error.

■ ■ The evidence on the trial was in substantial conflict as to the key issues of fact. The very able counsel for the State Highway Department contends both that there was no evidence in support of the plaintiff's case as to certain essential particulars and that, as to some of the evidence adduced, certain witnesses contradicted themselves to the extent that their testimony cannot be credited. We recognize the closeness of the case and that it is not reflected in the facts stated here and chosen because they tend to support the verdict rendered. "It is our duty to determine whether the verdict as rendered can be sustained under any reasonable view taken of the proofs submitted to the jury." *Farlow v. Brown*, 208 Ga. 646, 648 (68 SE2d 903). Ambiguities and contradictions in the testimony of witnesses, insofar as they affect their credibility, address themselves exclusively to the jury. *Andrews v. State*, 196 Ga. 84 (8) (26 SE2d 263).

The evidence, thus construed, shows in brief that the defendant has the sole responsibility for designing the highway, and that prior to designing the road its employees test-bored the right of way to determine, among other things, the water level. There was testimony that the water table changed during the course of construction, and there was also testimony that the rainfall during the period was less than average. After the plaintiff had completed 3½ miles of the project so far as sub-grading was concerned it ran into violent difficulties with the next stretch over the high water table, when, after laying and 100% compaction, the test-rollings were made with the 35-ton roller. There were numerous failures, pointed out to the plaintiff by the defendant's engineers, caused in the opinion of some witnesses by the fact that "they were placing a 35-ton subgrade compaction over a subgrade that the water was too low to the surface where the rolling was being done" and capillary attraction caused it to rise to the surface. The Department engineers advised the plaintiff to dry out this dirt, and this was attempted by an accepted engineering method of taking a motor grader, scatterflying the subgrade, rolling the material out to one side, letting it dry in the sun, and subsequently rolling it back in.

There was a difference of opinion as to whether this was a pay item as unclassified excavation; Shadburn testified that if a weakness shows up and repairs are ordered the contractor is paid for both removing and replacing the dirt, but if after being first placed it gets too wet before the rolling and he dries it out, he is not entitled to anything. Somewhere along the line there was a proposal to pay for removing but not for replacing the material. The Department failed to keep records of this work between July 24 and August 13, and eventually Fain agreed to accept the plaintiff's records for that period of time; the dispute is for amounts owing after this time. On October 13, according to the diary entry of Haney, a Highway Department engineer: "Mr. Abercrombie, Mr. Wolford, Mr. Cone, Mr. Best, Mr. Haney, Mr. Dubois with State met with Mr. Barber, Mr. E. J. Cobb and Mr. Hodges [with the plaintiff company] to discuss the roadway condition as to subgrade failures. The solution to the wet condition was decided to be due to bad design and it was thought that by adding six inches soil cement to the balance of the roadway, including grade changes in old road, the design would be corrected. The soil cement would have to be put in such a manner as not to be cracked up after being rolled to 100% compaction. Also discussed was leaving out certain grade changes as would not interfere with site distances. These changes would have to be approved by the Federal Government." Asked why the payments were refused, the witness said that according to Haney "because the material met the specifications and as long as the material met the specifications required for the job that he did not feel the subgrade repairs were to be paid for." This, of course, was contrary to the interpretation of the specifications by Fain and Shadburn, also employees of the defendant as Resident Engineer and Division Engineer respectively. Work was completely discontinued between October 13 and November 9, 1959, while design changes were in process, and supplemental agreements were then entered into to raise the subgrade by pulling in dirt from the shoulders and by changing the nature of the base from a soil bound macadam to a soil cement bound macadam. White testified that after August 13, 1959, he kept records of work on which the plaintiff was paid. His diary showed 15 entries. As to these he eventually stated on cross

examination that all but two were reconstructed. The plaintiff, of course, contended that the reconstructed entries were wrong and that it was due a substantial amount of unclassified over that shown by the diary; also, although the last repairs were completed on October 8, a witness for the plaintiff testified that he ascertained from White and others on October 27, 1959, that they were still reconstructing the records. The plaintiff sought payment on the basis of its own records on the ground that under these circumstances the defendant's records were inaccurate, worthless, and fraudulent. Its evidence was sufficient to present a jury question of whether the items of recovery sought in paragraphs 6, 10, 11 and 14 of the petition as unclassified excavation and cost of delay were due to faulty design rather than to either the fault of the plaintiff or accidental circumstances as to which it has assumed the risk, and whether, if the former, this fact plus the conduct of the defendant in delaying to redesign the road, keeping inaccurate records, and ordering continued proof-rolling of areas where faulty design made it impossible to achieve results was "so grossly erroneous as to imply fraud, bad faith, or failure to exercise an honest judgment." *State Hwy. Dept. v. MacDougald Constr. Co.*, 189 Ga. 490 (2b), supra. This is not a decision that the plaintiff was entitled to recover in any specific amount, but only that there was sufficient evidence to make a jury issue on the question of whether or not the decision of the highway engineer precluded this action in the first instance.

There remains an item of $461.87 for clearing and grubbing. The testimony as to this is that the area involved is outside construction lines; that the plaintiff first cut stumps, presumably to the water line, but that at a later time, also presumably after the water line had receded, a decision was made that the area would be mowed and grassed. The contractor was instructed to cut the stumps again so that this could be done, and the item is claimed as extra work over and above the specifications. Section 100.04 (b) states: "In areas outside construction lines where it will be impracticable to use power mowers in maintaining the right of way . . . shall be cut off within 6 inches of the ground line. Trees to be cut and stumps that protrude from water shall be cut off at the lowest level reached

by the water during the period of construction." Where, during the period of construction, the water recedes leaving an area to be sodded and on which power mowers are to be used, the additional cutting necessitated by removing stumps is a part of the lump sum item, and the plaintiff was not entitled to extra compensation for the extra work so necessitated.

The trial court did not err in overruling the demurrers to the petition but erred in overruling the motion for a new trial.

*Judgment reversed. Jordan, J., concurs. Felton, C. J., concurs specially.*

FELTON, Chief Judge, concurring specially. ■ I concur in the judgment and in all other rulings by the majority except as noted in this special concurrence. I do not concur in the last sentence of division (2a), as follows: "The petition here makes a jury question on the issue of whether the damage resulting from continued wetness which was the cause of proof-rolling failures was a liability of the plaintiff or the defendant." I do not think that the statement goes far enough. It overlooks the · question of bad faith or gross mistake. The damage might have been due to the fault of the department by reason of faulty design (on demurrer only) and delay in correcting it, but the jury, to hold the department liable, would have to find bad faith on the part of the department in the making of the faulty design and in the delay in correcting it. A note should be added here to the effect that there could be no recovery for faulty design alone because the construction company was fully aware of it before it made its bid. If it gambled on the high water level and lost, it could not plead a known faulty design as a fraud upon it.

■ Division 3 of the majority opinion deals with the petition of the plaintiff in error for a diminution of record and by implication overruled the contention of the defendant in that the judgment should be affirmed on the general grounds because the entire contract between the parties was not introduced in evidence and was not brought up as a part of the record. I agree that a diminution of record ruling is not necessary and hold that under the facts hereinafter stated both parties are estopped to deny that the parts of the contract which were introduced in evidence contain all of the agreements, etc., necessary

to a decision of all of the questions in this case, those raised by demurrers and on motion for a new trial. The Cobb Construction Company sued for damages based on an entire contract, the exact parts of which were stipulated by the parties and the stipulation was approved by the court. It was stipulated by the parties that all parts of the contract be considered as a part of the petition for the purposes of demurrer so that the voluminous material need not be physically attached to the petition. It was not stipulated that all of the different parts of the contract be considered as having been introduced in evidence. The Cobb Construction Company, though relying for recovery on an entire contract, did not introduce any part of the contract in evidence. As a consequence, one conclusion would be that there could be no recovery because of the absence of the entire contract upon which the action is in part principally based. However, in all fairness I do not think this result would follow, because the Highway Department introduced in evidence the parts of the contract which it contended governed all issues in the case, and on the other side of the ledger the construction company made no objection to the introduction of only a part of the entire contract and both parties tried the case on the basis of the incomplete contract introduced in evidence and my opinion is that both parties are estopped by an admission in judicio, in the absence of objection for incompleteness of the matter introduced, to say now that the parts of the contract introduced in evidence by the Highway Department were not sufficient for the decision of every issue involved.

■ I do not concur in the ruling in Division 4 of the opinion. It was error for the court to instruct the jury that the contract sued on, having been prepared by the State Highway Department, should be construed against it. The court should construe contracts in all cases except where there is an ambiguity and evidence as to how it should be construed authorizing more than one construction. I do not think that the department agreed for the jury to construe the contract or is estopped to except to the charge in this instance because it requested the court to charge the jury that it should construe certain sections of the contract in connection with others. The Department may have been in error in agreeing for the jury to construe sections in pari materia,

which might render them plain and unambiguous, but it certainly did not mean that the flood-gates were opened for a charge that the jury should construe *unambiguous* provisions of a contract. Unambiguous provisions of a contract are not construed by anybody against anybody.

■ I concur in the ruling in Division 8 except that the error in the charge does require a new trial. As to the discussion of the facts in Division 8 and 8 (a) I do not agree that under any circumstances can the plaintiff recover for a faulty design of which it knew before its bid for the contract, either alone or in conjunction with delay in the correction of the design. In my opinion the only recovery which could be had in this case must be based on fraud or gross mistake on the part of the department amounting to fraud in unreasonably delaying the correction of the faulty design. In my opinion there was not sufficient evidence to show fraud or gross mistake on the part of the department in the delay in correcting the design which both parties knew was faulty and exactly why, from the time of the bidding.