125 Ga. App. 376 (1972)
187 S.E.2d 690
WESTERN CONTRACTING CORPORATION
v.
STATE HIGHWAY DEPARTMENT.
46603.
Court of Appeals of Georgia.
Argued October 5, 1971.
Decided January 26, 1972.
Alston, Miller & Gaines, Henry J. Miller, Ronald L. Reid, for appellant.
Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., *385 Executive Assistant Attorney General, Marion O. Gordon, Assistant Attorney General, Marshall R. Sims, Robert E. Sherrell, Deputy Assistant Attorneys General, for appellee.
CLARK, Judge.
Plaintiff-appellant's several count complaint alleges existence of a highway construction contract between the parties and breach thereof in several respects. This appeal is from an order granting both a motion to dismiss the complaint and a motion for a judgment on the pleadings as to all counts of the complaint.
The record in this case is voluminous consisting of 133 pages plus six separate books or documents containing Standard Specifications, Notice to Contractors, Proposal, and Highway Construction Engineering Plans. This court owes thanks to the able counsel on both sides for the manner in which each of them aimed towards making our task of decision easier by simplifying the issues provided through the extensive research and learned briefs.
This is the second appearance of this case, the first appeal being reported as Western Contracting Corp. v. State Hwy. Dept., 123 Ga. App. 331 (181 SE2d 89) which refrained from dealing with the questions now presented.
Essentially, the complaint alleges plaintiff entered into a contract with defendant State Highway Department to construct the 5.049 miles of grading, dredging, and hydraulic embankment on Interstate 95 in Glynn-McIntosh Counties; that as a part of the contract defendant provided plans designating certain "borrow pit" areas adjacent to the proposed right of way from which plaintiff was to pump the hydraulic material in order to construct the embankment; that after construction began plaintiff learned certain of the designated privately owned borrow areas were unavailable for use, which was contrary to the contract; and that borrow pit areas farther away from the proposed embankment had to be used, thus requiring increased expenditures. Of particular importance is a document entitled Sheet 22 of the plans captioned "Pit Location Sketches Hydraulic Borrow" which *377 is more fully discussed herein.
Count 1 alleges defendant was promptly notified of the landowner's refusal to allow acquisition of material from their property, but defendant took no action whatsoever to acquire these borrow areas notwithstanding they had been designated in the plans as available for use at the date the contract was made. Plaintiff thus had to expend more funds for labor, machinery, equipment and fuel than was contemplated at the date of the making of the contract. This count also alleges a retainage now due is being withheld by the defendant because of the dispute between the parties; and that plaintiff has complied with all provisions in the contract required prior to the bringing of the complaint, including a request for arbitration, which was denied.
Count 2 repeats the unavailability of the designated borrow pits. It further alleges the Highway Department was contractually obligated to obtain options from the owners of any lands shown on the plans as designated sources of borrow material; that only after plaintiff began performance of its obligations was it learned defendant had breached the contract by failing to obtain such options; that defendant was immediately notified of the breach but failed and refused to cure same by obtaining the options from all the owners, although plaintiff allowed defendant a reasonable period of time to do so; that plaintiff then attempted to obtain agreements but was unsuccessful with respect to some of the areas; and that because of this breach plaintiff suffered extensive delays in performance of its obligations, resulting in additional costs.
Count 3 realleges the unavailability of the designated borrow pits and further alleges plaintiff notified defendant that being denied use of the designated borrow areas would result in "extra work under the contract" (the contract which is a part of the complaint defines "extra work" as work necessary for completion which was unforeseen during preparation of the Plans and Specifications) but that defendant refused to enter into a *378 supplemental agreement (the contract provides a basis for such agreement) and instead directed plaintiff to continue its work.
Count 4 again alleges the unavailability of the designated borrow pits and proceeds upon the theory that defendant's failure to obtain the necessary options for the borrow pit area shown on the plans constituted a "change in the plans" and thus a change in the nature and extent of the work to be performed under the contract; that the defendant was notified that this change in plans had resulted in an alteration in the character of the work and a substantial change in the nature of the construction and materially increased the cost of performance, but defendant failed to enter into a supplemental agreement regarding the increased cost of performance, and directed plaintiff to continue with its work.
Count 5, couched in quantum meruit, repeats the failure to obtain the options and further alleges the unavailability of the designated borrow pits shown in the plans constituted a "mistake" in the plans; that plaintiff was required to do additional work which was accepted by the defendant; but that defendant has failed and refused to pay plaintiff therefor despite work completion and demand for payment.
Count 7 realleges the unavailability of the designated borrow pits, and further states that defendant was notified thereof; that defendant would not execute a supplemental agreement; and that before undertaking that portion of the work in question it further notified the defendant of its intention to claim extra compensation in accordance with the procedure delineated in the contract therefor.
Each count of the complaint, with the exception of Count 1, additionally alleged that the defendant's failure to perform in accordance with the obligations alleged in the respective counts was such as to amount to bad faith or fraud. These allegations undoubtedly are pleaded to meet the ruling of this court in State Hwy. Dept. v. W. L. Cobb Constr. Co., 111 Ga. App. 822 (143 SE2d 500).
*379 Other counts originally contained in the complaint have been abandoned.
Defendant's motion to dismiss the complaint was addressed to each count therein except Count 1. The motion was made and sustained as to each count to which it was addressed on the grounds of (1) failure to state a claim upon which relief might be granted, (2) failure to state a claim upon which relief might be granted in that no recovery was authorized by the contract as a matter of law, and (3) failure to state a claim upon which relief might be granted in that the complaint shows a claim for rescission which had been waived.
Defendant's motion for a judgment on the pleadings was addressed to all counts of the complaint, certain grounds of which necessarily draw in issue the sufficiency of each count of the complaint as stating a claim for which relief might be granted. Held:
1. The rule which we apply when a complaint or a count therein is tested by a motion to dismiss for failure to state a claim is set forth in Harper v. DeFreitas, 117 Ga. App. 236, 238 (160 SE2d 260): "On a motion to dismiss, a complaint should be construed in the light most favorable to plaintiff with all doubts resolved in his favor... The plaintiff is entitled to the most favorable inferences that can reasonably be drawn from the complaint, even if contrary inferences are also possible... The motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim." (Citations omitted).
The claims made in Counts 1, 2, 3, 4 and 7 must stand or fall ultimately on whether defendant was obligated by the contract to make the designated borrow pits available.
Defendant's position is that when the appropriate portions of the "Proposal," the "Highway Construction Engineering Plan," the "Standard Specifications for the Construction *380 of Roads and Bridges, Volumes I and II," are properly construed (all of which together constitute the contract between the parties), the plaintiff's claim must fail. In particular defendant argues plaintiff was not authorized to draw from the contract the understanding that the designated borrow pits in question were contemplated by the parties as available for use in the construction project.
We have reviewed the entire contract with particular emphasis on those portions of the contract emphasized by the excellent briefs and arguments of counsel for both parties. We cannot find that the construction which defendant places upon the contract with regard to the borrow pits in question is the only one which is logical and permissible. For example, Sheet 22 of the Plans is entitled "Pit Locations Sketches Hydraulic Borrow." It, together with other portions of the Plans, shows that the proposed highway embankment traverses several streams and rivers (i.e., the Altamaha, Champney and Butler Rivers and the Darien and Cathead Creeks) in a marsh area. A borrow pit is a location from which the material needed for roadway construction is to be taken. In this case the borrow pits were, in reality, segments of the river and creek bottoms in the area of the construction. Contrary to defendant's contention that Sheet 22 of the plans merely provided plaintiff with a general location of areas where the U. S. Department of Army (which is concerned with maintaining the public's right of navigation notwithstanding private ownership) had agreed to permit dredging, this sheet depicts five clearly defined and numbered borrow pits. Furthermore, this sheet of the plans is drawn to the scale of 1" = 1,000' and, therefore, shows with a certain amount of precision the location and boundaries of the borrow pits in question. It further shows, within each pit location, the type of borrow available and whether it is usuable with or without "muck removal." It shows as to each pit the volume (in cubic yards) of material available, although with regard *381 to Pit No. 5 the volume available is noted as "Approx." It further shows where in the project in delineated lengths and width and in what volume the material taken from each respective pit is to be placed to create the embankment. It shows the names of the owners of the property through which the embankment and the various waterways run.
The defendant places heavy reliance on an admittedly conspicuous notation appearing on Sheet 22, to wit: "Note: These Pits Are Shown As Possible Sources of Material."
In view of all the information contained on Sheet 22, we do not find that the above notation must imply to one studying the plans and preparing a bid or proposal and preparing to enter into a contract thereon that the parties did not contemplate at least the availability of the borrow pits shown on the plans as sources of embankment material. It may or may not have so implied. The notation is susceptible to construction as a caution to one studying the plans that some of the material in the pits, when exhumed, may or may not meet other contract requirements as to quantity and quality. Where construction of a contract is required, it is to be construed most strongly against the party who formulated it. State Hwy. Dept. v. Wright Contr. Co., 107 Ga. App. 758, 762 (131 SE2d 808, 1 ALR3d 1260).
In the construction of a contract, the contract as a whole must be looked to in arriving at the construction of any part. Code § 20-704 (4); Cotton States Mut. Ins. Co. v. Hutto, 115 Ga. App. 164, 166 (154 SE2d 375); Cleveland Ave. Liquor Store v. Home Ins. Co., 115 Ga. App. 864, 867 (156 SE2d 202). "Construction of ambiguous written contracts is a matter for the court, and no jury question is raised unless after application of all applicable rules of construction the ambiguity remains." Farm Supply Co. of Albany v. Cook, 116 Ga. App. 814 (1) (159 SE2d 128); Davis v. United Amer. Life Ins. Co., 215 Ga. 521 (2) (111 SE2d 488); McCann v. Glynn Lumber Co., 199 Ga. 669, *382 679 (34 SE2d 839). Special Provision § 108 in the Proposal (p. 113) specifies that "The quantity of material shown on the plans as available in the borrow pits is not guaranteed by the State Highway Department. Payment for material from sources where such material is privately owned will be made by the Contractor directly to the property owner." Standard Specifications, Vol. 1, § 2.06, of the contract required the bidder to examine the site of the work, the proposal, plans, specifications, etc., and satisfy himself as to the conditions to be met, as to the character, kind and quantities of work to be done, the materials to be furnished, the requirements of the specifications, and further cautions the bidder that any losses caused by a failure to do so would have to be borne by the bidder. Standard Specifications, Vol. I, § 6.01 b, provides: "The sources of local material will be shown on the Plans, and the amounts of royalties and other costs and conditions of acquisition of the material from the owner will also be so shown... The Department will obtain all necessary options from the owners... The Department does not guarantee that the quantity or quality of acceptable material required can be obtained from any designated source, and the failure of such designated sources to contain material in sufficient quantities or of acceptable quality shall not be the basis for any claim against the Department for extra compensation not provided for herein." (There are provisions in the contract for handling the last mentioned eventuality.)
The Proposal (p. 41) contains a Supplemental Specification modifying § 5.04 of the Standard Specifications. This specification states which of the various contract provisions will control in cases of conflict between same. We have diligently applied ourselves to the puzzle and have used all the applicable rules of construction. We do not find the contractual intention of the parties with regard to the availability of the borrow pits to be sufficiently certain and unambiguous to allow us to declare it as a *383 matter of law. Knowledge of the contractual intentions and obligations is, of course, necessary in making any determination as to breach.
The contract in this case, specifically the Proposal at page 129, provides: "The decision of said State Highway Engineer upon any question connected with the execution of this agreement or any failure or delay in the prosecution of the work by said contractor shall be final and conclusive." Such a provision is valid and a decision by the engineer thereunder, it has been held, would be binding on the parties in the absence of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise honest judgment." See State Hwy. Dept. v. W. L. Cobb Constr. Co., 111 Ga. App. 822, 825, supra. As previously noted, the plaintiff has additionally alleged in Counts 2, 3, 4 and 7 that defendant refused fraudulently or in bad faith (1) to obtain the necessary options on the borrow pits after having agreed to do so and while having the power to do so; or (2) to acknowledge the result of the alleged breach as "extra work" and enter into a supplement contract for which the contract made provision; or (3) to acknowledge the result of the alleged breach as constituting a "change in the contract plans" requiring a supplemental contract; or (4) to acknowledge and honor plaintiff's "claim for extra compensation" made in accordance with the contract provisions therefor.
Counts 2, 3, 4 and 7 state claims for which relief may be granted.
2. Count 5 proceeds upon the theory of a mistake in the defendant's plans and a right to recover on quantum meruit for the additional work allegedly caused thereby. This count states a claim for which relief may be granted. State Hwy. Dept. v. Hewitt Contr. Co., 221 Ga. 621, 624 (146 SE2d 632).
3. One ground of the motion to dismiss asserts that the respective counts of the complaint show the existence of a claim for rescission which had been waived and thus state no claims for relief.
*384 Generally, one injured by the breach of a contract has the election to rescind or continue under the contract and recover damages for the breach. Harden v. Lang, 110 Ga. 392, 394 (36 SE 100); 17 AmJur2d 903, 904, Contracts, § 445. A party may rescind a contract when both parties can be restored to their respective conditions before the contract was made. Code § 20-907. None of the complaint's several counts show that the parties could have been restored to their respective conditions at the time of the alleged breach. Even if it were otherwise the plaintiff was not required to rescind. The several counts of the complaint were not subject to dismissal on this ground.
4. It has been made to appear from the pleadings that the defendant has recognized the validity of plaintiff's claim to $5,000 retainage and has paid such to the clerk of the court below. See in this connection the previous appeal of this case reported as Western Contr. Corp. v. State Hwy. Dept., 123 Ga. App. 331, supra. The trial court properly granted defendant's motion for a judgment on the pleadings as to plaintiff's claim in Count 1 for the retainage. But a judgment for defendant on the pleadings was not authorized as to the remainder of the claim set forth in Count 1 or as to the remaining counts.
The trial court erred in granting defendant's motion to dismiss the respective counts of the complaint for failure to state a claim. The trial court also erred in granting defendant's motion for a judgment on the pleadings as to each of the respective counts except to the extent indicated in Division 4 above.
Judgment reversed in part; affirmed in part. Hall, P. J., and Eberhardt, J., concur.