## A95A2099. BABY DAYS, INC. et al. v. BANK OF ADAIRSVILLE.
(463 SE2d 171)

BIRDSONG, Presiding Judge.

Appellants/defendants Baby Days, Inc. et al. appeal from the judgment entered in favor of appellee/plaintiff Bank of Adairsville. This case arises out of a series of commercial lending transactions from appellee bank to appellant Baby Days and its president, appellant John J. Holmes. All parties moved for summary judgment; the trial court granted appellee's motion and denied appellants' motion. Judgment was entered against appellants on the Baby Days' note, together with interest and attorney fees.

On about August 9, 1990, appellant John J. Holmes executed a $126,216 promissory note ("Holmes' personal note") to appellee bank; this was the original principal amount for the purchase of a commercial building ("Adairsville property"). The security agreement provisions within the note contained the following "dragnet" clause: "SECURED OBLIGATIONS: Until terminated in writing, this security agreement secures the payment of this note and all other debts borrower may now or in the future owe to lender (including, but not limited to, all other notes, insurance premiums, overdrafts, letters of credit, guaranties and all extensions, renewals, refinancings and modifications of this note and of such other debts)." Relatively contemporaneously with Holmes' personal note, appellant John J. Holmes executed a deed to secure debt ("Holmes' security deed") in favor of appellee bank to secure payment of Holmes' personal note. The security deed provided it was to "secure to lender (a) the repayment of the indebtedness evidenced by the note, with interest thereon." The Adairsville property (building and real property) constituted the collateral for the Holmes' personal note.

On about November 24, 1992, appellant Baby Days executed a $195,514.85 promissory note ("Baby Days' note") as a working capital (corporate) loan to finance its operation. This loan was directly secured by accounts receivable, equipment, inventory and a certificate of deposit. Baby Days' note contained the following provision: "SECURITY: . . . (b) This note may be secured by prior or subsequent security documents notwithstanding that such security is not indicated hereon." Relatively contemporaneously with the Baby Days' note, appellants John J. Holmes and Mary Emma Holmes executed loan guaranty agreements guaranteeing the Baby Days' note. Edison Industries, Inc. also guaranteed payment of Baby Days' note. In February 1993, Baby Days first defaulted on Baby Days' note; appellant John J. Holmes defaulted on Holmes' personal note on May 1, 1993. Appellee accelerated the Baby Days' note on June 24, 1993. On July 1, 1993, under a claimed right of setoff, appellee applied a $25,000 Bank of Adairsville certificate of deposit against the debt

claimed due and owing under Baby Days' note. Approximately two weeks later, also under a claimed right of setoff, appellee applied a $201.93 Baby Days' bank balance against the remainder of the debt due and owing under the Baby Days' note; during this same time period, appellee applied a $3,416.09 bank balance against the amount claimed due and owing under the Baby Days' note. After this setoff, a balance remained on the Baby Days' note. On September 7, 1993, appellee exercised its power of sale under the Holmes' security deed and bid the Adairsville property for itself for $135,000; although the deed under the power of sale was filed on September 20, 1993, the sale under the power was not confirmed in a confirmation proceeding pursuant to OCGA § 44-14-161. Appellee contends it did not confirm the foreclosure sale and seek a deficiency judgment against John J. Holmes on his personal debt because the current market value of the building roughly equalled the outstanding balance of the debt. Since September 1993, appellee has been unable to sell the building; in June 1994, appellee attempted without success to auction the building for $65,000.

Appellee commenced two suits for the balance due on the Baby Days' note; the first suit was filed against appellants Baby Days, John J. Holmes and Mary Emma Holmes and the second suit was filed against appellant Edison Industries. The suits were consolidated; appellee filed a motion for summary judgment, and appellants filed summary judgment cross-motions. The trial court granted appellee's motion and denied appellants' cross-motions.

Appellants contend that John J. Holmes had a single debt to appellee arising out of several contracts, bound together by "dragnet" clauses, secured by a single security agreement, and collateralized by a single piece of realty which was foreclosed upon without subsequent confirmation of the foreclosure sale. Further, they contend that such lack of confirmation barred appellee's action for a deficiency judgment (see generally OCGA § 44-14-161 (a)) against John J. Holmes. Moreover, appellants assert that the obligations of Mary Emma Holmes and Edison Industries are affected by appellee's failure to confirm the sale of the Adairsville property because they are co-sureties with John J. Holmes, and appellee's claim against Mary Emma Holmes and Edison Industries was satisfied and barred under OCGA § 10-7-20 when appellee compounded John J. Holmes' obligation as a co-surety and thereby caused a release of the obligations of Mary Emma Holmes and Edison Industries. *Held*:

1. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370

SE2d 843). Any doubt as to the existence of a genuine issue of material fact is resolved against the movant. See *Kelly v. Vargo*, 261 Ga. 422, 423 (1) (405 SE2d 36).

2. Appellants' contention that the trial court erred in granting summary judgment in favor of appellee bank and against appellant John J. Holmes is without merit.

There exists no case directly on point with the facts attendant this case. However, we find that the rationale and legal precedent of *Salter v. Bank of Commerce*, 189 Ga. 328 (6 SE2d 290); *Breitzman v. Heritage Bank*, 180 Ga. App. 171 (348 SE2d 713) and *Vaughn & Co. v. Saul*, 143 Ga. App. 74 (237 SE2d 622) are most persuasive and controlling. Compare *Devin Lamplighter Ltd. v. American General Finance*, 206 Ga. App. 747 (1) (426 SE2d 645) (two separate debts, evidenced by two separate notes, and secured by two separate security deeds) where the failure to confirm foreclosure under the second security deed did not bar appellee from suing on the remaining independent, separate, unsecured obligation.

We find notwithstanding the existence of only one security deed that Holmes' personal note arose from a separate and distinct personal debt while that of the Baby Days' note arose from a separate and distinct corporate debt: (a) The loans were not to the same debtor; (b) the debtors executed the loan instruments at different times; (c) each loan was for a separate and distinct purpose — Holmes' personal loan was to purchase commercial real property, and the Baby Days' corporate debt was to obtain working capital to finance its operation; and (d) the corporate debt was backed by certain securities not serving as collateral as to Holmes' personal note and loan. As in *Vaughn & Co.*, supra at 77, "[w]e hold that the present action is not to recover a *deficiency* judgment on the debt for which foreclosure was had, but to recover on a separate, subsequent and different note [two years] later for a different debt and for which a conveyance of other property was made as security. The note sued upon is a separate transaction from that which was the basis for foreclosure, is not within the prohibition of [OCGA § 44-14-161 (a)], and [appellee bank] was not barred from bringing action thereon." As appellee bank does not seek a deficiency as to the secured Holmes' personal debt but recovery on a separate corporate debt, albeit that this corporate debt was guaranteed by others including John J. Holmes, "the fact that the [appellee] did not seek to have the sale of the realty confirmed is irrelevant to [appellants'] liability. See *Vaughn & Co.*[, supra at 75 (1)]. It follows that the trial court did not err in granting summary judgment in favor of the [appellee and against appellant John J. Holmes]." *Breitzman*, supra at 172. Nor do we find it necessary to deviate from *Vaughn & Co.* and *Breitzman* merely because the dragnet clause pertaining to the Holmes' personal loan documents

conceivably could be construed as indirectly subjecting the foreclosed real property (that served as direct collateral to Holmes' personal loan) to constitute additional collateral, through the medium of the Holmes' guaranty documents, for the corporate loan. The real property did not serve directly as collateral to the corporate loan, and we will not allow the separate legal character of the corporate loan to be defeated by such indirect means. Moreover, we agree with appellee bank that adopting appellants' argument "would set [a] dangerous precedent for our current credit system." We recognize that there exists no prior precedent for our construction of the effect of the dragnet clause in view of John J. Holmes' guaranty of the separate corporate loan. Nevertheless, "[t]here can not be a precise precedent for everything. Where there is a clearly established principle, the lack of a precedent is no obstacle. There must some time be a first precedent." *Crosby v. Potts*, 8 Ga. App. 463, 466 (69 SE 582). Moreover, our holding today is consistent with the well-established appellate principle that "[t]he law does not entitle one to *profit* by his own wrong." (Emphasis supplied.) *State Hwy. Dept. v. W. L. Cobb Constr. Co.*, 111 Ga. App. 822, 827 (2) (143 SE2d 500).

3. As the effect of our above ruling is to hold that appellee bank did not release or compound the obligations of John J. Holmes represented by his personal guarantee of the Baby Days' corporate loan, appellants' contention that Mary Emma Holmes and Edison Industries were released by operation of OCGA § 10-7-20 (release of or compounding with one surety shall discharge a co-surety) is without merit.

Even assuming John J. Holmes had been released from his personal guarantee, nevertheless Mary Emma Holmes and Edison Industries expressly waived any defense that they might have which was related to their OCGA § 10-7-20 claim by virtue of the terms of their guaranty documents. The guaranty documents were signed by Mary Emma Holmes in her individual capacity and John J. Holmes as President of Edison Industries, respectively. Each guaranty document pertinently provided: "All diligence in collection . . . and notice of non-payment, dishonor and default, and of the acceptance of this guaranty . . . are hereby expressly waived. . . . Authority and consent are hereby expressly given said creditor from time to time, and without notice of the undersigned, to give and *make* such . . . settlements and *compromises* as it may deem proper with respect to any of the indebtedness, liabilities and obligations covered by this guaranty, *including the taking or releasing of security* and surrendering of documents." (Emphasis supplied.) A guarantor may consent in advance to a course of conduct which would otherwise result in his discharge, and this includes the waiver of defenses otherwise available to a guarantor. *Jones v. Dixie &c. Div., O'Brien Corp.*, 174 Ga. App. 67, 69 (2)

(329 SE2d 256). Thus, Mary Emma Holmes and Edison Industries waived their right to claim their own discharge having expressly consented to appellee's unilateral compromise of the scope of indebtedness and liabilities by any resulting release of security, including any resulting release of John J. Holmes from his individual guaranty. Compare *Twisdale v. Ga. R. Bank &c. Co.*, 129 Ga. App. 18, 21 (1) (b) (198 SE2d 396).

Appellants' remaining enumeration of error 5 is without merit. The respective loan guaranty documents clearly provided on their face that Mary Emma Holmes guaranteed Baby Days' debt to the extent of $195,514.85, and Edison Industries guaranteed Baby Days' debt to the extent of $200,000.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED OCTOBER 19, 1995 — 

*James W. Penland*, for appellants.
*Joe Frank Harris, Jr.*, for appellee.