### 20212. CONTINENTAL FINANCE & LOAN CO. *v.* CRYSTAL LAUNDRY & CLEANERS, INC.

CANDLER, Justice. Eugene Lymon and Mary Lee Lymon conveyed certain items of personal property to Continental Finance & Loan Company to secure an indebtedness of $630. The loan was not paid at maturity, and on July 8, 1957, the company brought bail-trover against them in the Civil Court of Fulton County to recover the property so conveyed. The defendants filed no defense. At the trial and on the company's election therefor, a money judgment was rendered on August 8, 1957, in its favor for $630 and costs of suit. On August 20, 1957, the company instituted garnishment in the Civil Court of Fulton County, naming Eugene Lymon as the defendant in that proceeding. The garnishment affidavit and bond state that the defendant Lymon is due the company a balance of $580 on its trover judgment besides $16 costs. On August 21, 1957, a summons of garnishment was issued on the company's affidavit and bond and served on Crystal Laundry & Dry Cleaners, Inc., Eugene Lymon's employer. On September 30, 1957, the garnishee filed its answer showing that it had, as of September 27, 1957, withheld from the wages of the defendant Lymon a specified amount which was subject to the process of garnishment; that it had received notice of a voluntary proceeding in bankruptcy filed by him; and that it would retain the money so withheld from his wages until direction as to its disposition was given by a court having jurisdiction to do so. The company on the same affidavit and bond afterwards caused two other summonses to be issued and served on the garnishee, which answered them and reported the amounts withheld from the defendant Lymon's wages. An answer, which the garnishee filed on January 28, 1958, alleges that the defendant Lymon was adjudged a bankrupt in the United States District Court for the Northern District of Georgia on September 27, 1957. The three answers

filed by the garnishee show that it had withheld from the defendant Lymon's wages a total of $345.83, and of that amount the court awarded $45 to the garnishee as and for expenses incurred by it in preparing and filing its answers. The plaintiff brought a money rule in the Civil Court of Fulton County against the garnishee and prayed for an order requiring it to pay the plaintiff the balance of the amount so withheld as and for a credit on its judgment which was obtained in the trover action. It was therein alleged that the money judgment which the plaintiff elected to take in the trover suit is not a dischargeable debt in the defendant Lymon's bankruptcy proceeding. The defendant Lymon made no response to the rule, but when it came on for a hearing, the question of Lymon's bankruptcy was raised by the garnishee in the argument of its counsel, and the garnishee and the plaintiff company orally requested the court to determine whether or not the garnishee should pay the funds withheld from the defendant Lymon's wages into the registry of court since he had been adjudicated a bankrupt, but no evidence was offered respecting the bankruptcy proceedings or the status thereof. The trial judge ordered the garnishee to pay the balance of the amount withheld from the defendant Lymon's wages into the registry of the court and directed the clerk thereof to pay the amount so deposited to the plaintiff or its attorney. His order also recites: "It is further considered, ordered and adjudged that the garnishment proceedings shall not be stayed because of [the defendant Lymon's] adjudication in bankruptcy." The Court of Appeals reversed the trial judge in part and in so doing held: "An in personam judgment elected in a trover action is dischargeable by bankruptcy, unless it comes within the exceptions stated in the Bankruptcy Act, insofar as it has no application to the specific property upon which its lien is caused to attach." In this ruling the Court of Appeals held that no part of the defendant Lymon's wages earned after he was adjudicated a bankrupt on September 27, 1957, which the garnishee had withheld, could be legally applied to the payment of the plaintiff's judgment. On application therefor we granted the writ of certiorari to review that part of the court's ruling. *Held:*

1. By the ruling excepted to, the Court of Appeals held that no part of the wages which the defendant Lymon earned after

September 27, 1957, was subject to the process of garnishment, and that the finding and judgment of the trial judge was to that extent erroneous. This holding by the Court of Appeals was based on the proposition that the defendant Lymon filed a voluntary petition in bankruptcy and was adjudicated a bankrupt in the District Court of the United States for the Northern District of Georgia on September 27, 1957; that the plaintiff's debt against Lymon which had been reduced to a money judgment in its trover action was duly scheduled in the bankruptcy proceeding; that he had, after being adjudicated a bankrupt, applied for and obtained a discharge which barred the plaintiff's right to collect its debt; and that the debtor's obligation was in law a dischargeable debt. There is no evidence in the record upon which the Court of Appeals could base this ruling. All the record shows respecting Lymon's bankruptcy proceeding is the following: The garnishee in one of its answers states that it had been notified that Lymon had filed a petition in bankruptcy, and in another it is alleged that Lymon was adjudged a bankrupt on September 27, 1957. The brief which the garnishee's counsel filed for it in the Court of Appeals, where it was the plaintiff in error, states: "While it does not appear in the record on this appeal, the defendant in error will not deny that the aforesaid judgment was duly scheduled in the bankruptcy petition and that the bankrupt debtor has since received his discharge." And the brief filed by the garnishee in this court states: "While technically it does not appear in the official record of this case, the applicant for certiorari has never denied, and it will not now deny, that the trover judgment in question was duly scheduled in the debtor's petition." Respecting the preparation of a brief and its effect, our Rule 14 (Code § 24-4515) provides that it must be in two parts and that "Part One shall contain a succinct but accurate statement of such pleadings, facts, assignments of error, and such other parts of the bill of exceptions or the record as are essential to a consideration of the errors complained of." And Rule 15 (Code § 24-4516) requires opposing counsel to point out any material inaccuracy or incompleteness in counsel's statement of what the record shows or else he will be held to have consented to a decision of the case on the statement made by opposing counsel. However, Rule 15 applies only where there is an inaccurate or incomplete state-

ment by counsel for the plaintiff in error as to what the record actually shows, and proper practice in the Court of Appeals and in this court requires counsel in his statement of the facts of any case brought to either court for review and decision to confine himself to the record made in the trial court and what it actually shows; he cannot by his brief supply evidence which the record does not contain. In this case the Court of Appeals based its ruling here excepted to on its statement of facts, which recites that the defendant Lymon was adjudicated a bankrupt on a petition which duly scheduled the plaintiff's debt as one of his obligations, and that a discharge was subsequently obtained by him as to that scheduled debt; and since the record brought to the Court of Appeals does not show the facts upon which it made its ruling, we must and do hold that the ruling complained of is necessarily erroneous, and this is true irrespective of whether the plaintiff's debt is or is not dischargeable in bankruptcy. The Court of Appeals, like any other appellate court, must always reach a decision in any case brought to it for review from the facts properly before it and from the law applicable to those facts. In the instant case it does not appear from the record that the debt declared on was scheduled in the defendant Lymon's bankruptcy proceeding or that he ever secured a discharge in his bankruptcy proceeding which would bar an action for its collection.

2. A motion for rehearing in this case was timely made in the Court of Appeals, embracing the same question as the one upon which error is assigned in the application for certiorari, and it was finally disposed of adversely to the movant. Since, therefore, the motion for rehearing complied with Rule 49 (Code § 24-4553) respecting motions for rehearing, there is no merit in the motion to dismiss the writ of certiorari. Accordingly, the motion to dismiss is denied.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., and Head, J., who dissent. Mobley, J., concurs in the judgment only.*

ARGUED OCTOBER 16, 1958—DECIDED NOVEMBER 7, 1958—
REHEARING DENIED NOVEMBER 19, 1958.

*Joel J. Fryer,* for plaintiff in error.
*Smith, Kilpatrick, Cody, Rogers & McClatchey, James A.*

532

*Bagwell, James P. McLain, Jr., Thomas C. Shelton,* contra.

*Moise, Post & Gardner; Allen Post, J. William Gibson, G. Seals Aiken, Chas. W. Bergman, Arthur G. Withers, W. Owen Slate, Vester M. Ownby,* for parties at interest not parties to record.