21927. SORRELLS et al. v.
ATLANTA TRANSIT SYSTEM, INC.

SUBMITTED JANUARY 17, 1963—DECIDED FEBRUARY 7, 1963.

*Powell, Goldstein, Frazer & Murphy, James K. Rankin*, for plaintiffs in error.

*Dent Acree, Hugh M. Dorsey, Jr., Jule W. Felton, Jr., Hansell, Post, Brandon & Dorsey*, contra.

ALMAND, Justice. Thomas C. Sorrells and his wife, Mrs. Alice

Sorrells, filed their petition against Atlanta Transit System, Inc., as defendant, seeking to recover damages which the plaintiff husband sustained in a collision between the automobile he owned and was driving and a trackless trolley owned and operated by the defendant. The cause of action based upon the negligence of the defendant was contained in the first 13 numbered paragraphs of plaintiffs' petition.

Plaintiffs alleged certain matters in their petition from paragraphs numbered 14 through 24 inclusive for the purpose of attacking the release and seeking its cancellation on the grounds that it had been obtained from the plaintiffs by fraud and misrepresentation of defendant's claim agent, one J. A. LeVert. A copy of the release sought to be set aside was attached to plaintiffs' petition, marked Exhibit "A" and made a part thereof. As was alleged in paragraph 24 of plaintiffs' petition, the sole reason for the wife, Mrs. Alice Sorrells, being joined with her husband as a party plaintiff was because she had, at the request of Le-Vert, joined with her husband in the execution of the release sought to be canceled.

The substance of the allegations contained in their petition which sought to avoid the release which they had executed and delivered to defendant are:

That J. A. LeVert, a claim agent for defendant, who was experienced and trained in all legal matters affecting the rights of parties in collision cases, including vehicles which were covered by collision insurance, on inspecting Sorrells' damaged automobile at a repair garage had ascertained that the damage to the car was covered by a policy of collision insurance. He also ascertained that the total amount of the repair bill was $518.29, subject to a $50 deductible to be paid by Sorrells and that the collision insurance carrier of Sorrells was liable to pay the remaining $468.29 thereon. Thus informed, LeVert then contacted plaintiffs for the purpose of negotiating settlement, and at his request plaintiffs gave him full information, not only as to the amount of the automobile repair bill but also as to the medical, eye-glass loss, and other items of special damages, the total being approximately $595. Sorrells was only liable for the payment of $50 deductible on the $518.29 total automobile

repair bill as his collision policy covered the remainder of that bill, both LeVert and Sorrells well knowing the same. Sorrells desired to be made whole for the damages he had sustained by reason of the trackless trolley having collided with him, and Sorrells was unwilling to settle on any basis which would affect his insurance claim of approximately $468. Thereupon, LeVert assured Sorrells that the total amount of the automobile repair bill except for the $50 deductible would be paid by Sorrells' collision carrier to whom Sorrells had already reported the collision. LeVert further assured Sorrells that any settlement he made on behalf of defendant with plaintiffs would not affect or otherwise impair same. After detailed discussion of the individual items of damages, LeVert finally offered on behalf of defendants to pay plaintiffs $164.50 ". . . on the express understanding that such a settlement would not affect the insurance claim which Sorrells had already made on his insurance policy and which was then pending adjustment. The said LeVert assured plaintiffs that the settlement would not affect the right of Mr. Sorrells to have his repair bill paid by his insurance carrier and further stating that he would prepare the settlement release in such a manner that when the Sorrells signed same it would fully protect them so they could collect the $468.29 due Sorrells by his insurance carrier and thus enable Sorrells to pay Kelly Motor Company the full amount of his automobile repair bill. Moreover, LeVert told the plaintiffs that he was experienced and trained in all legal matters affecting the rights of parties in such cases, whereas plaintiffs were unlearned in such matters having had no knowledge or experience therein as the said LeVert well knew at that time. At said time and place LeVert knew that plaintiffs did not have the equal opportunity or means of knowing the truth of the statements and representations and the nature thereof as did the said LeVert, and that the plaintiffs would rely on his said statements and representations." (Paragraph 16 of plaintiffs' petition.)

Relying upon the representations of LeVert and particularly being assured that by accepting from defendant the sum of $164.50, Sorrells would not be required to pay the entire $518.29 automobile repair bill but only $50 deductible thereon which was

included in the consideration being paid by defendant, and being assured that the release would not cut off or otherwise impair the pending claim under his insurance policy, plaintiffs signed the release, copy of which was attached to their petition as Exhibit "A." In so doing, they later discovered that they had signed a general release of all liability, with the result that plaintiffs unwittingly destroyed their right of subrogation of their own insurance policy under which they had a pending claim; thus they unwittingly and unknowingly, because of the wrongful conduct of LeVert, barred themselves from perfecting their pending claim, thereby losing their right to collect their pending insurance collision claim of $468.29 which was otherwise valid. In short, because of the fraud and deception of LeVert, plaintiffs received $164.50 and were deprived of their contractual right to receive $468.29 on their insurance claim.

Plaintiffs in error contend that their petition alleged sufficient facts to authorize the court to at least submit the issue of the validity of the release to a jury for determination, and that their petition was not subject to dismissal on general demurrer.

■ Our jurisdiction to review the judgment in this case is based upon the prayers for cancellation of the release on the ground that it was obtained by fraud of the defendant's agent. The question on this contention is: Did the representation of the defendant's agent to the plaintiff, Thomas C. Sorrells, that if he received the amount offered, and executed a release, the release would be so limited that it would not prevent Sorrells from recovering from the insurer under his policy of automobile collision insurance the amount of damages to his automobile; and did the accompanying payment of a sum of money to the plaintiff by the defendant, thereby causing the plaintiff to execute a general and full settlement of his claim and thereby preventing him from receiving any sum from the insurer by reason of the terms of the policy, amount to a "misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge . . . acted on by the opposite party [Sorrells]" (*Code* § 37-703), thereby constituting legal fraud? The gist of Sorrells' complaint is that the defendant's agent "assured plaintiffs that the settlement would not affect the right

of Mr. Sorrells to have his repair bill paid by his insurance carrier and further that he would prepare the settlement release in such a manner that when the Sorrells signed it would fully protect them so they could collect the $468.29 due Sorrells by his insurance carrier"; and that relying upon these representations the plaintiffs signed the release. There are no allegations that the plaintiffs read the paper purported to be a release or asked that it be read to them or that the defendant's agent by any trick or artifice kept them from reading or that they were unable to read. There was no confidential relationship between the parties. One having the capacity and opportunity to read a written contract and who signs it not under any emergency and whose signature is not obtained by any trick or artifice cannot afterwards set up fraud in the procurement of his signature to the instrument. See *Swofford v. First Nat. Building &c. Assn.*, 184 Ga. 312 (191 SE 103). In *Arthur v. Brawner*, 174 Ga. 477 (163 SE 604), it was held that a petition seeking equitable relief by way of cancellation of leases because of misrepresentation as to the contents of the written leases was subject to general demurrer where the petition did not allege that plaintiffs had no opportunity to read them or that they were prevented by defendants' fraudulent acts from doing so.

The allegations that the representation of the defendant's agent that the release "would not affect the insurance claim which Sorrells had already made on his insurance policy and which was then pending adjustment" does not amount to fraud. It was a statement of opinion as to the legal consequences of the purported settlement. In *Swofford v. Glaze*, 207 Ga. 532 (63 SE2d 342), the plaintiff sought to recover damages for the alleged negligent homicide of her husband and to cancel a paper she signed reciting the receipt of $1,000 and releasing the defendant from all liability on account of his death. She alleged that she signed the release on the representation of the insurance agent of the company which had liability insurance on the car of the defendant, "that if she resorted to legal action she would get nothing" and that she, being without business experience and ignorant of her legal rights, relying on these repre-

sentations, received the offered amount and signed the release. This court in holding that the trial court did not err in directing a verdict for the defendant said: " 'A court of equity will not afford relief to a party who, with all the means of protecting himself against the imposition of the other party, abandons them and relies on his statements.' *Castleberry v. Scandrett,* 20 Ga. 242. 'Misrepresentations as to a question of law "can not constitute remedial [remediable] fraud, because every one is presumed to know the law and therefore can not in legal contemplation be deceived by erroneous statements of law, and such representations are ordinarily regarded as mere expressions of opinion." 26 C.J. 1207, 1208, § 106.' " *Swofford v. Glaze,* 207 Ga. 532, 535, supra.

See for an analogous ruling *Rowland v. Rich's, Inc.,* 212 Ga. 640 (94 SE2d 688).

It follows from the above that the release signed by the plaintiff was not subject to being canceled.

Our ruling here is not contrary to our decision in *Bass v. Seaboard Air Line R. Co.,* 205 Ga. 458 (53 SE2d 895). There the plaintiff executed a release settling his claim for personal injuries on the representations of defendant's physician that his injuries were not permanent. After he signed the release, upon further examination by a physician, it was discovered that the injuries to his back were permanent. The quotation, in *Bass,* p. 467, from *Smith v. Mitchell,* 6 Ga. 458, that "If a party thus affirming a fact *believes it* to be true, when it is false, it is a fraud *in law* and equity will rescind the contract and restore the parties to their original rights," is subject to certain exceptions. It was there said: "Decisions of this court might be cited to illustrate the exception, such as where the releasor has equal or superior knowledge as to the subject-matter, or where the error is as to the contents of a paper which could as readily become known to the releasor as to the releasee and where no trick, artifice, etc., was practiced upon the releasor to prevent his acquainting himself with the contents of such a paper." 205 Ga. 458, 468, supra.

■ The release not being subject to cancellation on account of alleged fraud, and the alleged cause of action for damages grow-

ing out of the subject matter of the release which fully released the defendant from all liability on account of the same, no cause of action against the defendant was alleged and it was not error to sustain the general demurrer and dismiss the petition.

*Judgment affirmed. All the Justices concur.*