## 48627. WHEAT v. MONTGOMERY.

EBERHARDT, Presiding Judge. Mrs. Joann Wheat brought suit against James H. Montgomery for damages alleged to arise from the wrongful death of her minor child who had been struck by the Montgomery car and fatally injured as he crossed a street in traffic. The defendant filed several defenses, including that of accord and satisfaction alleged to have been effected by releases signed by the plaintiff, and on the basis thereof moved for summary judgment. Plaintiff's deposition was obtained and tendered at the hearing, along with affidavits of plaintiff and her husband and of Charles Cook, an adjuster who issued drafts and obtained the releases on behalf of the defendant and his liability

insurance carrier, of the plaintiff and her husband, and a certificate from a doctor to the effect that when the release had been obtained plaintiff was taking a tranquilizer (Librium) which he had prescribed for her nervous condition following the death of her son. Plaintiff admitted that she was a high school graduate and could read and write, but asserted that she did not read the releases and signed them under a representation that they were receipts for monies paid to her and her husband to cover the hospital and funeral expenses of her son, and that the drafts were in the exact amount of those expenses.

After a hearing the motion for summary judgment was granted and plaintiff appeals. *Held:*

1. The releases introduced at the hearing and which plaintiff admitted having signed, are, in form, clearly not mere receipts but are general releases. *Southern Bell Tel. & Tel. Co. v. Smith,* 129 Ga. 558 (59 SE 215); *Pennsylvania Cas. Co. v. Thompson,* 130 Ga. 766 (61 SE 829).

2. One who is capable of reading is under a duty to read before signing a contract of release. *Jossey v. Georgia Southern & Florida R. Co.,* 109 Ga. 439 (34 SE 664). If he is competent to contract and fails to read before signing, he will be bound by it, absent any artifice, trick or fraud used to prevent his doing so, and absent any fiduciary relationship existing between him and the party procuring his signature to the instrument. *Morrison v. Roberts,* 195 Ga. 45 (23 SE2d 164); *Drew v. Lyle,* 88 Ga. App. 121, 123 (76 SE2d 142); *Thomas v. Byrd,* 107 Ga. App. 234 (129 SE2d 566); *Southern Stages v. Fullington,* 66 Ga. App. 773 (19 SE2d 324).

3. No fiduciary relationship exists between one having a claim against an insured and the agent of a liability carrier who seeks settlement of the claim, and a release obtained by him from a party having a claim for damages is binding, even if the statements and representations made by him relative to liability or nonliability for the damages were incorrect or based upon erroneous reasons, unless he has prevented the claimant from making investigation of his legal rights in the premises. *Swofford v. Glaze,* 207 Ga. 532 (63 SE2d 342); *Howard v. Georgia Home Ins. Co.,* 102 Ga. 137 (29 SE 143); *Sorrells v. Atlanta Transit System, Inc.,* 218 Ga. 623 (1), 627 (129 SE2d 846); *Sherwin-Williams Co. v. St. Paul-Mercury Indem. Co.,* 97 Ga. App. 298, 299 (102 SE2d 919); *Fields v. Fire & Cas. Ins. Co.,* 101 Ga. App. 561 (114 SE2d 540); *Clinton v. State Farm Mut. Auto. Ins. Co.,* 110 Ga. App. 417

(138 SE2d 687); *Tinsley v. Gullet Gin Co.,* 21 Ga. App. 512 (2) (94 SE 892); *Walton Guano Co. v. Copelan,* 112 Ga. 319 (37 SE 411).

4. The releases are unambiguous and parol evidence to vary their terms is inadmissible. *Southern Bell Tel. & Tel. Co. v. Smith,* 129 Ga. 558, 559, supra; *Clarke v. Fanning,* 127 Ga. App. 86 (2) (192 SE2d 565).

5. Rules as to the admissibility of evidence are applicable in summary judgment proceedings, since the statute provides that all affidavits, depositions, etc. "shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify as to the matter stated therein." Code Ann. § 81A-156 (e); *Standard Oil Co. v. Harris,* 120 Ga. App. 768, 775 (172 SE2d 344).

6. (a) It appears from the evidence that appellant's son died on April 3, 1972 from injuries received March 30, 1972, and that the claims adjuster, having been called on the telephone by plaintiff's husband and requested to come to the home and discuss the matter of the hospital and funeral expenses, went to the home where he met Mr. and Mrs. Wheat and after discussing the situation with them (largely with Mr. Wheat) agreed to pay the amount of the hospital and funeral expenses, although it was the view of Mr. Montgomery and his insurer that Montgomery had in no manner been at fault and that the accident occurred because of the child's running out into the street. It was then thought that the hospital expenses would be about $700, and that the funeral expenses would be $1,536. Drafts for $1,000 to cover the hospital bill (the exact amount not having been obtainable at the time) and for $1,536 to cover the funeral bill were issued to the Wheats April 4, and releases were obtained from them. The drafts were endorsed and used. Later, when the hospital bill was obtained, it exceeded by $608.34 the payment of $1,000 which had been made and on April 17, 1972 an additional draft for $608.34 was delivered to the Wheats and a new release was obtained from them in the total amount of the bill, $1,608.34. This draft was likewise endorsed and used. The releases were general as to any and all claims which the releasors might have arising out of the injury to and death of their son.

These facts show no fraud that would avoid the releases, and no such fraud is pleaded as is required by Code Ann. § 81A-109 (b). Consequently, if the plaintiff was competent to execute the releases she is bound by them. *Henry v. Allstate Ins. Co.,* 129 Ga. App. 223 (199 SE2d 338). And see *James v. Tarpley,* 209 Ga. 421

(2) (73 SE2d 188).

(b)  On the matter of whether the plaintiff received compensation for her claim arising out of the death of her son, the general releases being jointly signed by her and her husband, and the amount of the drafts made jointly to them equaling the approximate total of the hospital, medical and funeral expenses, the liability for any amount being a disputed matter, see the last paragraph of *Walsh v. Campbell,* 130 Ga. App. 194, and *Caplan v. Caplan,* 62 Ga. App. 577, 580 (9 SE2d 96). As to whether the compensation may have been inadequate see and compare *Hendricks v. W. & A. R. Co.,* 52 Ga. 467; *The Southwestern R. Co. v. Johnson,* 60 Ga. 667 (2); *Porter v. Sou. R. Co.,* 73 Ga. App. 718 (37 SE2d 831), and *Murray v. Woods,* 106 Ga. App. 267 (2) (126 SE2d 828); *Johnson v. Cook,* 123 Ga. App. 302 (1) (180 SE2d 591); *Maloy v. Dixon,* 127 Ga. App. 151, 164 (193 SE2d 19). Relative to the effect of the retention and use of the proceeds from the settlement, see *Rivers v. Cole Corp.,* 209 Ga. 406 (73 SE2d 196).

7. Plaintiff testified that when she signed the releases she was "in a state of shock" from the death of her son, "was on tranquilizers and I just didn't read nothing," that she signed the releases because her husband asked her to do it, and that she and her husband subsequently got the money on the drafts. In her affidavit she asserts that on the day after her son died, when the adjuster came to her home "I was under a prescription for tranquilizers from my family doctor, and I had taken a tranquilizer pill shortly before meeting Mr. Cook in our home. I was also grieving and mourning over Michael's loss and was not able to think clearly." Dr. A. M. Davis certified that he had prescribed Librium, 10 mg., to be taken three times a day to Mrs. Wheat on April 3, 1972, due to emotional problems which she was having at that time.

(a)  That the plaintiff was suffering from grief and shock on account of the death of her son, even if proven, would be insufficient to cancel and set aside the releases obtained, particularly that which she signed April 17, a fortnight after the son's death, which by its terms is a general release. *Swofford v. Glaze,* 207 Ga. 532, 536, supra. Cf. *Hixon v. Georgia Sou. &c. R. Co.,* 163 Ga. 734 (137 SE 260).

(b)  Nothing in the record indicates whether she was still taking the tranquilizer when the releases of April 4 or of April 17, 1972 were signed, or what the effect of the drug may have been, or whether at either time it would or did incapacitate her to the

extent that she could not make a contract. In this connection see *Atlanta & W. P. R. Co. v. McCord,* 54 Ga. App. 811, 816 (12) (189 SE 403); *Southeastern Greyhound Lines v. Fisher,* 72 Ga. App. 717 (2) (34 SE2d 906); *Branan v. LaGrange Truck Lines, Inc.,* 94 Ga. App. 829 (96 SE2d 364); *Dannelly v. Cuthbert Oil Co.,* 131 Ga. 694 (63 SE 257).

The defendant is entitled to the benefit of a presumption that Mrs. Wheat was normal and possessed of her mental faculties and fully capable of contracting, certainly on April 17, nothing appearing to the contrary (*Thomas v. Georgia Granite Co.,* 140 Ga. 459, 460 (79 SE 130); *Holcombe v. State,* 5 Ga. App. 47 (4) (62 SE 647)), and upon a trial this would be sufficient under the evidence as it stands to call for a directed verdict. But the rule is different in summary judgment proceedings; the incidence of the burden of proof is different. On the trial the plaintiff, asserting her incapacity to contract because she was taking prescribed drugs, has the burden of proving that she was not, at the time of signing the releases, capable of contracting, while on summary judgment the movant has the burden of showing that she was capable. This means that since plaintiff asserts her incapacity the movant has the burden of showing that she was either not taking Librium when at least one of the releases was signed, or that if she was it was not a drug which so adversely affected one's mental faculties as to render her incapable of contracting, or that the quantity prescribed would not do so. See *Southern Bell Tel. & Tel. Co. v. Beaver,* 120 Ga. App. 420 (3) (170 SE2d 737). It immediately appears that if this were attempted the movant would inevitably get into the area of opinion evidence, which is proscribed as the basis for granting the motion. *Ehlers v. Golding,* 227 Ga. 742 (2) (182 SE2d 870); *Ginn v. Morgan,* 225 Ga. 192 (167 SE2d 393).

The movant is entitled to the benefit of the rule that the contract of one who is non compos mentis, but who has never been adjudicated to be insane, or a lunatic, or of unsound mind, is not absolutely void, but voidable only, and is to be treated as valid until the contrary is sufficiently made to appear. If made by the contracting party during a lucid interval, the contract is good. Code § 20-206. But in the face of her assertion of incapacity, movant must, on summary judgment, rebut the claim. On a trial the rule is otherwise; plaintiff there has the burden of sustaining her claim.

8. On motion for rehearing it is urged that there should be an

affirmance because of the failure of the plaintiff to tender back the benefits which she had received under the releases before filing the action, that being a condition precedent to a recovery, and that this is true even though the plaintiff may have been of unsound mind at the time she executed the releases, whether from the taking of drugs or otherwise.

"It is a condition precedent, for a mentally incompetent to relieve himself from a contract made during his incapacity, to restore the benefits received by him if such benefits are still in his possession or control. In other words, he must place the grantee, in all repects, as far as possible, in statu quo." *Fields v. Union Central Life Ins. Co.,* 170 Ga. 239 (6a) (152 SE 237).[1]

It does not appear from the petition or from the evidence as to whether the plaintiff has tendered back the benefits which she received under the releases, or, if she has not, whether it is possible for her to tender a return of the benefits or any portion thereof. See *Atlanta Banking & Savings Co. v. Johnson,* 179 Ga. 313, 318 (175 SE 904).

Our attention is called to an admission in appellee's brief indicating that no tender has been made, and this without any explanation as to whether plaintiff could have tendered a return of the benefits, or any portion thereof. However, none of this is in the record and we must proceed upon what appears in the record alone. *Continental Finance & Loan Co. v. Crystal Laundry &c. Inc.,* 214 Ga. 528, 531 (105 SE2d 727).

As indicated above, under the rules which have been developed for procedure in summary judgments the burden rested upon the movant to demonstrate that there was no genuine issue as to any material fact, including that of whether the plaintiff had the mental capacity to contract when the releases relied upon were signed, whether there had been a tender of the return of benefits received, and, if not, whether there were circumstances that would excuse the tender. This burden was not carried and the grant of summary judgment was error. Of course the rules are

---

[1]There is a difference in the situation where settlement has been made of an unliquidated claim, as here, and where there has been a settlement for a lesser amount of a contract for the payment of a specific sum, as in *Collier v. Collier,* 137 Ga. 658 (3) (74 SE 275); *Atlanta Life Ins. Co. v. Walker,* 53 Ga. App. 80, 84 (184 SE 776); *Sovereign Camp WOW v. Ellis,* 59 Ga. App. 608 (2) (1 SE2d 677).

quite different upon a trial, where the plaintiff has the burden as to these matters.

*Judgment reversed. Pannell and Stolz, JJ., concur.*

Argued October 5, 1973 — Decided October 17, 1973 — Rehearing denied November 2, 1973 —

*Schwall & Heuett, Lee S. Alexander,* for appellant.
*Henning, Chambers & Mabry, Peter K. Kintz, Eugene P. Chambers, Jr.,* for appellee.