Grace I. HUPP, Plaintiff-Appellant,

v.

MURPHY FINANCE COMPANY, a corporation, Defendant-Respondent.

No. 56325.

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1973.

James J. Raymond, Kenneth J. Bini, Clayton, for plaintiff-appellant.

Morie B. Soule and Hocker, Goodwin, Koenig, Gibbons & Fehlig, St. Louis, for defendant-respondent.

WINSTON V. BUFORD, Special Judge.

Plaintiff-appellant here seeks reversal of the trial court's order denying her petition in equity to vacate, set aside and enjoin enforcement of a magistrate court judgment rendered against her in defendant-respondent's favor. We have jurisdiction because the amount in controversy exceeds the jurisdictional amount in effect, and the appeal was taken before January 1, 1972.

The salient facts of the matter at hand are as follows:

On June 6, 1964, plaintiff, a married woman, executed a note and chattel mortgage in favor of Holland Freezer Company. The note, in the principal amount of $1,098.95, and chattel mortgage were given to finance the purchase of a Holland freezer and pay off another loan or account. The note, chattel mortgage and a "mortgage appraisal sheet" evidently were prepared by a representative of Holland. The collateral covered by the chattel mortgage consisted of certain items of household furniture and appliances. At the trial of the instant cause, plaintiff testified the subject personal property, with the exception of the freezer and a vacuum cleaner, had been purchased by her and her husband as long as six or seven years before the execution of the note and chattel mortgage in question and had remained in their household at all times thereafter, to and including the date of trial. Plaintiff's husband was not a party to the note or chattel mortgage. At the time the note and chattel mortgage were executed, plain-

tiff also executed a "mortgage appraisal sheet" listing these items and fixing their total value at $1,100. At the trial of this cause, plaintiff testified she told "the man from Holland Freezer Company" that all but two of these items already were mortgaged to another finance company. There is no evidence defendant was so informed at any time prior to January 19, 1965.

Plaintiff makes no complaint concerning the validity of the note and chattel mortgage and questions neither defendant's presumed status as a holder in due course nor that she defaulted in payment.

In December, 1964, plaintiff filed a petition in bankruptcy and subsequently was adjudicated a bankrupt on December 31, 1964. She listed defendant as a secured creditor in the schedules filed in the proceeding and representatives of the defendant attended the first meeting of creditors. Plaintiff subsequently was discharged in bankruptcy. Her discharge encompassed her indebtedness on the note in question and there is no contention her personal liability on the note was not dischargeable. The exact date of her discharge in bankruptcy is not shown in the record, but it antedated commencement of the magistrate court suit which resulted in the judgment here under attack.

On January 19, 1965, which the record indicates was shortly prior to plaintiff's discharge in bankruptcy, a representative of the defendant came to plaintiff's home seeking to take possession of the collateral under defendant's chattel mortgage. In the trial court, plaintiff testified she voluntarily offered possession of all of the collateral to defendant's representative on this occasion but he elected to take only a vacuum cleaner and the Holland freezer after she told him the other items were subject to a prior mortgage in favor of another finance company. This is the only evidence in the record that defendant was ever notified of the existence of the purportedly prior mortgage at any time before being served with plaintiff's petition in the

present lawsuit. There is no evidence as to when, if ever, either chattel mortgage was "perfected" by timely and appropriate filing. By answers to interrogatories introduced by plaintiff at trial, defendant admitted taking possession of the freezer and vacuum cleaner on this occasion and later selling them for $125. Defendant offered no evidence to explain why it did not then take possession of the other collateral.

On December 1, 1965, defendant filed a replevin suit against plaintiff only in the magistrate court for the seventh magistrate district of St. Louis county. By its replevin suit, defendant sought possession of the above-mentioned collateral. The petition and affidavit, in conventional form, alleged defendant's right to possession, plaintiff's wrongful detention, the value of the property and damages sustained by reason of plaintiff's detention of the property. No complaint is made regarding the sufficiency of this petition or affidavit. In its affidavit, defendant swore the value of the property to be $1,240 and additionally laid its damages at $400. At the trial of the present case, plaintiff testified the true value of the property at the time the replevin suit was filed was $211 at most, denied any injury to the property while in her possession and, on the basis of her January 19, 1965 offer to surrender the collateral voluntarily, denied wrongful detention.

There is no evidence in this record that defendant attempted to obtain possession of this collateral in any fashion or made any demand for it at any time between January 19, 1965, and commencement of the replevin suit. In the magistrate court proceedings, defendant did not post a replevin bond and, consequently, did not take possession of the property pending trial of the replevin suit, nor has it ever done so.

The record before us demonstrates plaintiff was duly served with process in the replevin suit and she makes no complaint as to service or lack of notice of hearing in the magistrate court.

Plaintiff failed to appear at the return date of the summons and, on March 4, 1966, the magistrate court rendered a default judgment against plaintiff for the assessed value of the property in the amount of $1,240 and damages for its detention in the amount of $400, defendant having elected to take a money judgment in lieu of recovery of the property pursuant to § 533.380, RSMo 1969, V.A.M.S.

On April 22, 1966, defendant transcribed its magistrate court judgment to the circuit court of St. Louis county and thereafter caused seven successive garnishments in aid of execution to be issued and served upon plaintiff's employer, resulting in collection of $617.58 on the judgment.

On September 13, 1967, plaintiff filed her two-count petition in this cause. In Count I she sought to invoke the equitable powers of the trial court to set aside the magistrate court judgment and enjoin further efforts by defendant to enforce it. In Count II, and in the event she were granted the equitable relief prayed in Count I, plaintiff sought actual and punitive damages in the sum of $59,500 by reason of defendant's allegedly wrongful executions upon the magistrate court judgment.

This cause duly came on for separate trial to the court below as to Count I only with further proceedings under Count II held in abeyance pending disposition of the issues joined under Count I. On September 25, 1970, the trial court found for defendant on Count I of plaintiff's petition "for the reason that the evidence fails to prove fraud on the part of defendant sufficient to authorize this court to set aside the magistrate court judgment." Following unavailing after-trial motions in appropriate form, plaintiff timely perfected her appeal to this court.

■ Technically, this appeal is premature inasmuch as Count II is still pending and the trial court did not designate the instant "judgment" final for purposes of appeal pursuant to former Rule 82.06 (now Rule 81.06), V.A.M.R. However, plaintiff clearly predicated her claim for damages under Count II upon a successful attack on the magistrate court's judgment under Count I. That attack having failed, her claim for relief under Count II now stands effectively foreclosed so that we treat the trial court's "judgment" as final for purposes of appeal, P.I.C. Leasing, Inc. v. Roy A. Scheperle Const. Co., Inc., 489 S.W.2d 219, 221 [5] (Mo.App.1972).

The precise grounds here presented in support of plaintiff's attack on the magistrate court judgment are not readily discernible from her brief but, this being an appeal in equity, we have fully considered the entire record and therefrom deduce them to be essentially as follows:

1. The judgment was procured by fraud upon the magistrate court in that defendant falsely swore the value of the property in question to be $1,240, its true value being only $211 or less; defendant falsely swore plaintiff wrongfully detained the property when in fact she had tendered possession to defendant some eleven months earlier, which tender and offer defendant declined, and defendant falsely represented to the magistrate court the property in question was plaintiff's sole property when in fact it was "jointly owned" by plaintiff and her husband;

2. The magistrate court judgment was a nullity because brought against only one of the two "joint owners" of the property in question; and,

3. Both entry of the judgment and its enforcement are precluded by plaintiff's discharge in bankruptcy.

We consider these contentions *seriatim.*

With respect to plaintiff's first contention, we preliminarily observe that:

" . . . Equity will not interfere with or hold void a judgment at law unless there was fraud in the procurement of the judgment *extrinsic to the matters upon which the judgment was rendered* . . .

Intrinsic fraud *which pertains merely to an issue involved in the action in which the judgment was obtained,* is not sufficient to afford equitable relief." Drainage District No. 1 Reformed v. Matthews, 361 Mo. 286, 234 S.W.2d 567, 573 (Emphasis ours).

More closely to the points at hand, neither fraud in the cause of action itself, in false allegations or false testimony, nor failure to litigate issues in the original case will suffice to impel equity either to vacate or restrain the enforcement of a final judgment, Cantwell v. Johnson, 236 Mo. 575, 139 S.W. 365, 373 [6] (1911); Reis v. La Presto, 324 S.W.2d 648, 655 [12] (Mo. 1959). To the foregoing, we add by reiterating the well-established and long-recognized principles that: a plaintiff has a heavy burden to bear to sustain a collateral attack such as is here mounted upon a final judgment fair on its face; every presumption is to be indulged in favor of the validity of the judgment; minimally, matters which could have been urged at trial or preserved through ordinary processes of appeal will not suffice to set aside the judgment no matter how erroneous it may have been; and the petitioner must have been deprived of an opportunity to contest the issues prior to rendition of the judgment by fraud, duress or excusable neglect.

In a jurisdictional sense, the allegation of value set forth in the affidavit or verified statement required to be filed in a magistrate court replevin serves only to fix the value of the property at a sum not in *excess* of the *monetary* jurisdiction of that court and to confine any judgment therefor to the jurisdictional limits of the magistrate court, Universal Credit Co. v. Axtell, 233 Mo.App. 354, 124 S.W.2d 555, 558 [4] (1939). This value, so fixed, determines jurisdiction regardless of what the actual value may be, Saunders v. Scott, 132 Mo.App. 209, 111 S.W. 874, 876 [4] (1908). Since plaintiff concedes the actual value of the property in question, whatever it may have been, and the damages prayed

by defendant in the magistrate court replevin action to be within the monetary jurisdiction of that court, it is of no moment from a jurisdictional standpoint whether the value so alleged was in fact true or false. Nor can we say with any confidence that the affirmation of value made by defendant in connection with the replevin suit was "fraudulent." Ordinarily, value is a matter of opinion as to which there frequently is a considerable diversity. Although we entertain considerable skepticism regarding the verisimilitude of the figure so vouched by defendant, we cannot find upon this record that it amounted to a "fraudulent" representation.

Whether plaintiff wrongfully or otherwise "detained" the property at the time the replevin suit was instituted likewise was no more than a factual allegation of "intrinsic" matter to be proven or refuted at trial, especially in view of the admitted fact that plaintiff then had possession of this property. In so ruling, we neither hold nor infer plaintiff's offer to return the property voluntarily prior to institution of the replevin action would have constituted a defense to that action.

The value and plaintiff's detention of the property, at most, present the kind of issues to be met by evidence at trial. Even if fraudulently represented by defendant, such would amount to "intrinsic fraud" only and clearly would not justify the equitable relief herein sought by plaintiff.

The claim that defendant falsely represented plaintiff to be the sole owner of the property in question is of the same genre and similarly fails to support her prayer for relief in this case. Moreover, we note the record is devoid of any evidence to demonstrate defendant knew plaintiff's husband had or claimed any ownership in the subject property at any time until service of plaintiff's petition in this suit and there is no evidence defendant made any such representation. Accordingly, neither we nor the trial court would be warranted in holding defendant

practiced any species of fraud in this respect.

Conceding, *arguendo*, plaintiff has established the property in question was owned by her and her husband as tenants-by-the-entireties at the time the chattel mortgage in question was executed and at all times since, such circumstance does not nullify the judgment of the magistrate court. Her contention in this regard presents nothing more than an argument as to a possible defect in parties which plaintiff necessarily waived by failure to appear and contest the issue, Hunt v. Easley, 495 S.W.2d 703, 707–708 [5] (Mo.App.1973). In passing, we note such ownership at the time the chattel mortgage was executed would have prevented defendant from obtaining a valid lien on this collateral. Bank of Jasper v. Langford, 459 S.W.2d 97, 100 [6] (Mo.App.1970). Again, however, that is an issue foreclosed by plaintiff's failure to appear and defend in the magistrate court and she has not even here asserted it.

Plaintiff's discharge in bankruptcy similarly did not deprive the magistrate court of jurisdiction to enter judgment. A discharge in bankruptcy neither satisfies nor voids a debt, it merely renders the debt unenforceable if the discharge is not waived. It is an affirmative defense which is lost if not timely and appropriately presented, Winthrop Sales Corporation v. Shelton, 389 S.W.2d 70, 73 [3] (Mo. App.1965). Here, plaintiff failed to assert her discharge in defense of defendant's magistrate court suit and she may not now avail of it to nullify the judgment by her present collateral attack.

Plaintiff perhaps has been subjected to a liability she could have avoided or mitigated had she taken the trouble to make an appropriate defense to defendant's magistrate court replevin suit. That is harsh, but it is neither unjust nor inequitable. For obvious reasons, public policy demands a definitive conclusion to litigation which has been conducted to finality in strict accord with procedures delineated by statute and rule of court. We are not disposed to abandon that salutary policy nor presently to impair its efficacy by permitting judgments to be collaterally attacked on the grounds here adduced. So far as the record depicts, plaintiff was given a full and fair opportunity in magistrate court to make the defenses she now urges. Whatever her reason, and none is here suggested, she neglected that opportunity and we are not constrained upon this record to rescue her from the consequences of her own indifference to the extent of declaring the magistrate court judgment void or invalid. Therefore, we affirm the trial court's action in refusing to vacate or set aside the magistrate court judgment. We further hold the magistrate court judgment is *res judicata* in all respects except as to its future enforcement, a matter to which we now direct our attention.

For reasons hereafter stated, we believe complete resolution of the present controversy necessitates going beyond the *finality* of the magistrate court judgment and looking into its *enforceability*, i. e., collection. At this juncture we again are confronted with the supravention of plaintiff's discharge in bankruptcy.

At the outset, however, we are constrained to determine whether plaintiff's discharge in bankruptcy would have constituted a defense in any event, for defendant did not take judgment on the debt as such. Despite plaintiff's discharge in bankruptcy, defendant clearly was entitled to possession of the collateral if its lien were valid. This necessarily follows for, in the case of a secured creditor, the discharge in bankruptcy releases the bankrupt from personal liability on the debt only. With certain exceptions not here material, the discharge does not affect, release, discharge or invalidate any liens on property of the bankrupt which were in existence prior to the petition or adjudication in bankruptcy. The lien may be enforced by any appropriate proceeding not involving a judgment in personam against the bankrupt

even though the claim for which the collateral stood as security has been discharged. Such a proceeding may include replevin or other possessory action. As a general rule, the discharge serves only to protect the bankrupt against personal liability for a "deficiency," C.J.S., Vol. 8B Bankruptcy § 582(1)(2); Remington on Bankruptcy, Vol. 8, § 3230; Pruellage v. De Seaton Corporation, 407 S.W.2d 36, 39 [4] (Mo. App.1966). Plaintiff's discharge in bankruptcy did not per se preclude defendant from "foreclosing" its chattel mortgage by replevin.

Whether the secured creditor may go beyond actual recovery of the collateral and obtain an alternative judgment in personam against the bankrupt for its value is a much more difficult question and one which seems to have received scant judicial attention. Georgia is one of the few jurisdictions which have considered this problem in any detail. The Georgia courts appear now to have settled on the proposition that the secured creditor has an unqualified right to elect to take an alternative money judgment for the value of the collateral or security interest, whichever is lesser, notwithstanding a discharge in bankruptcy, Land v. Consolidated Credit Corporation, 117 Ga.App. 275, 160 S.E.2d 219 (1968). Earlier, another division of the Georgia Court of Appeals had taken a contrary position, see Crystal Laundry and Cleaners, Inc. v. Continental Finance & Loan Co., 97 Ga.App. 823, 104 S.E.2d 654 (1958), reversed on other grounds *sub nom.*, Continental Finance & Loan Co. v. Crystal Laundry, 214 Ga. 528, 105 S.E.2d 727 (1958). The Supreme Court of Nebraska, on the other hand, has ruled that the secured creditor may not take an alternative money judgment unless it be shown that the bankrupt is chargeable with loss of the right of possession, Omaha U. S. Employees' Federal Credit Union v. Brunson, 147 Neb. 439, 23 N.W.2d 717 (1946). In Tipton v. Standard Installment Finance Co., 418 P.2d 309 (Okl.1966), the Supreme Court of Oklahoma stated that a post-discharge judgment in favor of the secured

creditor against the bankrupts for possession of the collateral or, in the alternative, for its assessed value was a judgment in rem and not in personam. There, however, the prevailing creditor elected to take possession so that this case is of little aid in resolving the issue upon the record before us.

Consonant with the policies of the Bankruptcy Act, we believe the proper rule to be that a discharge in bankruptcy is a defense to entry of an alternative money judgment where the bankrupt does nothing to impede the creditor in taking possession of the collateral pursuant to a proper order of delivery or judgment for recovery of possession, cf. Pruellage v. De Seaton Corporation, supra, 407 S.W.2d 36, 40–41 (Mo.App.1966).

What can this now avail plaintiff? In re Bowen, 222 F.Supp. 97 (1963), presented the United States District Court for the Northern District of Georgia with facts and issues substantially similar to those now before us. In speaking of the creditor's conduct in taking an alternative money judgment against the bankrupt in a post-discharge state court action, the court observed, 1. c. 101:

"Its legal maneuvers in this case we think were obviously made solely for the purpose and with the intent to circumvent the effect of a discharge in bankruptcy. To allow a money judgment obtained by a trover action in such a situation to be immune from the effects of a general discharge in bankruptcy of all scheduled debts would be, as Chief Judge Felton expressed in the Crystal Laundry case, supra, 'contrary to the letter and spirit of the bankruptcy law' . . . ."

The court went on to say, 1. c. 102:

"[A]n elected money trover judgment such as this, obtained by a scheduled creditor after bankruptcy, where there was no wilful and malicious conversion, to be construed as not discharged by his

discharge, is to allow a process subversive and destructive of the purpose and spirit of the Bankruptcy Act."

The court thereupon entered an injunction permanently restraining and enjoining the creditor from further proceedings on the judgment against the bankrupt. Upon persuasively analogous facts (varying chiefly in that the secured creditor sued on the debt and prevailed in magistrate court on the grounds of "non-dischargeability" by reason of conversion), the Court of Appeals for the Eighth Circuit reached the same result for essentially the same reasons in Robertson v. Interstate Securities Company, 435 F.2d 784 (8th Cir. 1971).

 Adverting briefly to defendant's course of conduct in this case, we are impressed by defendant's refusal to take possession of this collateral when plaintiff offered voluntarily to surrender it nearly a year before the replevin action was instituted, defendant's failure to offer any explanation for undertaking to put plaintiff to the vexation and expense of a replevin action when it could have obtained the full measure of its rights by accepting this offer, defendant's failure otherwise to seek or even demand possession during the interim, defendant's failure to take possession of the collateral pending disposition of the replevin action when clearly it was financially able to post bond and do so, defendant's election to take a money judgment rather than for possession, and defendant's taking judgment for an assessed value exceeding the original principal of the loan for which this collateral, with other property, served as security. In sum, viewing the record as a whole, we are convinced defendant made no good faith effort to obtain possession of the collateral in question and had no intention of doing so when it instituted the replevin action. Indeed, upon this record, we are ineluctably persuaded to conclude that defendant commenced and prosecuted the replevin action solely for the purpose of obtaining a money judgment against plaintiff. Strictly as a matter of Missouri law, defendant had

the right to do so, but, in the context of plaintiff's bankruptcy, defendant's conduct in so proceeding obviously was a mere legal stratagem concocted and pursued to evade the effect of plaintiff's discharge of her personal liability on the underlying debt. Such conduct is designedly "subversive and destructive of the purpose and spirit of the Bankruptcy Act" and we find it equally offensive to sound public policy. After all, the state of Missouri has a vital and subsisting interest in the social and economic "rehabilitation" of those of its citizens who are driven by financial distress to the desperate resort of bankruptcy. Where, as here, the bankrupt is not shown culpable of any conduct precluding discharge or dischargeability, we deem it in the public interest of this state to extend if necessary, rather than diminish, the protection afforded by the Bankruptcy Act in support of that rehabilitative effort. We feel reinforced in this view by the enactment of Public Law 91–467, 91st Cong., 2nd Sess., 84 Stat. 990, effective sixty days after October 19, 1970, amendatory of the Bankruptcy Act. The manifest thrust of this legislation is to expand substantially and in significant respects a bankrupt's protection against collateral litigation by an affected creditor. Indeed, with respect to those debts and creditors within its purview, this new dispensation grants the bankrupt virtual immunity to suit outside the immediate arena of the bankruptcy proceeding. See Robertson, supra, 435 F. 2d at p. 786 & n. 3 and present 11 U.S.C.A. § 32(f)(1) and(2).

 As a matter of comity, equity and public policy, we are impelled to extend the rationale of the above-cited federal decisions and Public Law 91–467 to resolution of the instant cause. However, we halt short of invalidating the magistrate court's judgment for all purposes and decline to direct its vacation. We are persuaded to afford plaintiff a shield against further efforts by defendant to enforce the judgment but find no equity in handing her a sword with which to exact retribution for a sup-

posed wrong to which she so manifestly contributed in substantial degree by her own indolence.

Accordingly, we reverse and remand with instructions to the trial court to enter an appropriate judgment and decree dismissing Count II of plaintiff's petition with prejudice and enjoining and restraining defendant from further efforts to enforce the magistrate court's judgment by execution or otherwise.

HENLEY, P. J., MORGAN, J., and DONNELLY, C. J., concur.

FINCH, J., not a member of Division when cause was submitted.