A06A0730. DALTON et al. v. CITY OF MARIETTA et al.
(633 SE2d 552)

MILLER, Judge.

In this wrongful death case, Deborah and Kevin Dalton alleged negligence and police misconduct leading to the death of their minor son, Bradley Dalton, at Kennestone Hospital (the "Hospital") in Marietta. Officer Kimberly Thomas of the City of Marietta Police Department, the City of Marietta, the Hospital, its parent corporation, Wellstar Health Systems, Inc. ("Wellstar"), and Hospital security officer Curtis Tidwell ("Tidwell") (collectively, the "Appellees") moved for summary judgment. The Cobb County State Court thereafter entered its order granting summary judgment to each of the Appellees, finding that the Daltons had failed to come forward with any evidence of causation or breach of duty. The Daltons appeal from this order. Since issues of fact remain as to both causation and breach of duty, we reverse.

"[O]n appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the [moving] party was entitled to judgment as a matter of law. This requires a de novo review of the evidence." (Citation and punctuation omitted.) *Zeigler v. Clowhite Co.*, 234 Ga. App. 627 (507 SE2d 182) (1998); *Rozy Investments, Inc. v. Bristow*, 276 Ga. App. 278 (623 SE2d 171) (2005).

Summary judgment is proper when the court, "viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Zeller v. Home Fed. Sav. &c. of Atlanta*, 220 Ga. App. 843 (471 SE2d 1) (1996). "Even slight evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from [the] evidence presented. [Cits.]" (Footnote omitted.) *Garrett v. NationsBank*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997).

So viewed, the evidence reveals that Bradley Dalton was kicked in the face while playing football, and taken to the Hospital. The emergency room physician summoned Dr. Daniel Moore, a neurosurgeon. En route to the Hospital, Dr. Moore was allegedly involved in a minor automobile accident with another vehicle, driven by Monique Hill. He advised Ms. Hill that he was needed at the Hospital on an emergency basis and left the scene with an agitated Ms. Hill in pursuit. Concerned that Ms. Hill might prevent him from arriving safely at the Hospital, Dr. Moore called 911 seeking assistance and advised the police dispatcher that he had left the scene of an accident due to an emergency call from the Hospital. The police dispatcher, in turn, called Hospital communications officer Bonnie Peel, informing her to assist Dr. Moore upon his arrival. Peel notified Tidwell of the situation.

On reaching the hospital, Dr. Moore examined Bradley Dalton in the trauma room and concluded that emergency procedures were necessary to relieve growing pressure in the child's head. As the child was being prepared for surgery, Dr. Moore went to the Hospital's nearby security office to report that he had arrived safely. There Dr. Moore was confronted by Officer Thomas (who had responded to a radio call concerning the alleged hit and run accident reported by Ms. Hill) in the presence of Tidwell and Peel.

While Tidwell blocked the door leading back to the trauma room, Dr. Moore explained that it was necessary that he perform emergency surgery and requested permission to leave for that purpose. Officer Thomas denied Dr. Moore permission to leave and only questioned him concerning the accident. Dr. Moore was able to call in his associate, who agreed to come to the Hospital to perform the emergency surgery. Officer Thomas and Tidwell then took Dr. Moore to the Hospital parking deck, where he was arrested. Dr. Moore's associate arrived at the Hospital to perform the emergency surgery in under 25 minutes and before Dr. Moore's arrest. Despite the doctor's efforts, Bradley Dalton died several hours after the surgery.

1. The Daltons contend that the trial court erred in granting summary judgment in favor of the Appellees upon finding no genuine issue of material fact as to causation. They argue that Dr. Moore's medical narrative report was probative of causation and that the trial court erred in refusing to admit it. We agree.

The trial court correctly found that the medical narrative report prepared by Dr. Moore, dated November 9, 2001, was the only evidence showing that the proximate cause of Bradley Dalton's death was delayed surgery resulting from Dr. Moore's detention. The trial court erred, however, in finding that medical narrative reports were admissible only at trial under OCGA § 24-3-18. In this regard, it is well settled that the trial court on summary judgment need not limit its inquiry to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" as set out in OCGA § 9-11-56 (c). "Those forms of evidence . . . are not the exclusive means of presenting evidence on a motion for summary judgment. The trial court may consider *any material which would be admissible or usable at trial.*" (Citations omitted; emphasis supplied.) *Benton Bros. Ford Co. v. Cotton States Mut. Ins. Co.*, 157 Ga. App. 448, 449 (1) (278 SE2d 40) (1981); accord *Wheat v. Montgomery*, 130 Ga. App. 202, 204 (5) (202 SE2d 664) (1973) ("Rules as to the admissibility of evidence are applicable in summary judgment proceedings.").

OCGA § 24-3-18 provides a specified exception to the hearsay rule and allows admission of medical opinions without requiring the production of the doctor as a sworn witness at trial. *Bell v. Austin*, 278 Ga. 844, 845 (1) (a) (607 SE2d 569) (2005). Subject to giving the adverse party 60 days notice prior to trial, the statute authorizes the admission of such reports insofar as they consist of medical opinions relating to the "history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations, including the basis therefor, by the person signing the report. . . ." OCGA § 24-3-18 (a). So long as medical narrative reports express the "relevant information in prose language that is more readily understandable to laymen[,]" they are admissible. *Bell*, supra, 278 Ga. at 847 (2) (b).

By his medical narrative report, Dr. Moore expressed the opinion that Bradley Dalton, "in all likelihood," would have survived "had he not been prevented from caring for [him]." This constituted a properly expressed medical opinion relating to his examination of Bradley Dalton under OCGA § 24-3-18. Since such opinion would be admissible at trial upon appropriate notice, it was admissible here on summary judgment. *Benton Bros.*, supra, 157 Ga. App. at 449 (1); *Wheat*, supra, 130 Ga. App. at 204 (5). As a result, the trial court erred in excluding it.

Further, the trial court erred in concluding that, even if Dr. Moore's medical narrative report were admissible on summary judgment as to the cause of Bradley Dalton's death, it did not support the proximate cause element of plaintiffs' claims since Dr. Moore deposed during discovery that "so much happened to [him] that [he was] reluctant to speculate" on the cause of the child's death.

Upon a motion for summary judgment, however, contradictory testimony, if left unexplained, may be disregarded only if the deponent-witness is a party, and not if the deponent is a nonparty expert witness. *Thompson v. Ezor*, 272 Ga. 849, 851 (1) (536 SE2d 749) (2000), distinguishing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (343 SE2d 680) (1986). As a result, Dr. Moore's initial opinion as to the cause of the child's death is admissible as substantive evidence in opposition to summary judgment. See, e.g., *Lowe v. Hadley*, 193 Ga. App. 525 (388 SE2d 394) (1989).

Whether nonparty expert witness Dr. Moore's deposition testimony contradicted his medical narrative report, or simply expressed a desire not to give a current opinion, it did not allow the trial court to disregard the narrative report. *Thompson*, supra, 272 Ga. at 851 (1). Since any evidence, however slight, is sufficient to meet a plaintiff's burden on summary judgment, *Garrett*, supra, 228 Ga. App. at 116, summary judgment for the Appellees based on the issue of proximate cause was error.

2. Further, the Daltons claim that the trial court erred in granting summary judgment to Tidwell, the Hospital, and Wellstar on the basis that they breached no duty of care to the Daltons. The Daltons argue that the duty of reasonable care required that Tidwell should not have detained Dr. Moore, and that he should have advised Officer Thomas, and, if necessary, higher Hospital authority, that Officer Thomas' traffic investigation was interfering with patient care. Again, we agree.

"Generally, a hospital owes a duty of reasonable care to its patients and is liable for those injuries negligently inflicted upon its patients by its employees. [Cit.]" *Meinken v. Piedmont Hosp.*, 216 Ga. App. 252, 253 (454 SE2d 147) (1995). In opposition to summary judgment in this regard, the Daltons introduced both the testimony of an expert witness and a basic training manual for healthcare security officers used at the Hospital. Collectively, this evidence indicated that Tidwell's acts and omissions fell below the foregoing standard of care in that he aided Officer Thomas in her investigation and detention of Dr. Moore, while failing to advise her that her investigation impeded urgent patient care.

A hospital's general duty of reasonable care extends to such actions as may reasonably be appropriate to prevent injury to patients from third parties, to include the police. See *Meinken*, supra,

216 Ga. App. at 253; see also Restatement of Torts, 2d, Torts, § 320 ("One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection . . . is under a duty to exercise reasonable care so to control the conduct of third persons as to . . . create an unreasonable risk of harm to him, if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity for exercising such control.").

Given evidence showing that Peel communicated the importance of assisting Dr. Moore to Tidwell and that Dr. Moore communicated the necessity of patient care to Tidwell, genuine issues of material fact remain as to whether Tidwell's conduct constituted a breach of his duty of care and, by extension, a breach of such duty by the Hospital and Wellstar. While a jury must ultimately determine the actual liability or lack thereof of the defendants, our duty as an appellate court is to reverse the trial court's grant of summary judgment to the defendants in light of the genuine issues of material fact that remain.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 12, 2006 —
RECONSIDERATIONS DENIED JUNE 29, 2006 — 

*Doffermyre, Shields, Canfield, Knowles & Devine, Kenneth S. Canfield, David S. Hagy,* for appellants.

*Hall, Booth, Smith & Slover, Ashley D. Phillips, Juaquin L. Feazell, Freeman, Mathis & Gary, Theodore Freeman, Andrea S. Hirsch, Green, Johnson & Landers, Henry D. Green, Jr., Lawrence J. LoRusso,* for appellees.