**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 28, 2020**

# In the Court of Appeals of Georgia

A20A0652. OWENSBY v. WILLIAMS.

RICKMAN, Judge.

Following the grant of her application for interlocutory appeal, Constance Owensby appeals the trial court's order sustaining Jason Williams's pre-trial objections to her treating physician's second medical narrative.[1] She contends that the trial court abused its discretion in sustaining Williams's objections to the narrative because the physician's discussion of future treatment was not "too speculative, inconclusive, or vague," the physician's opinion that Owensby was not a malingerer was part of his diagnosis, and the physician properly expressed an opinion on causation. For reasons that follow, we reverse and remand the case with direction.

---

[1] We note that Williams has not filed an appellate brief.

On October 12, 2016, Owensby and Williams were involved in a multi-vehicle collision. Owensby subsequently brought a personal injury suit against Williams and sought several types of damages, including past and future medical expenses. Williams admitted to his negligence in causing the collision but denied responsibility for any injuries claimed by Owensby.

During the litigation, Owensby filed a notice of intent to introduce at trial medical records in narrative form pursuant to OCGA § 24-8-826. She attached a medical narrative from a treating physician, which included an estimate of the approximate cost of future medical treatment, and medical records from the physician's office. Williams objected to the narrative on numerous grounds – the physician's statement of need for future treatment was too inconclusive, speculative, and vague; the statement regarding the cost of future medical treatment was too vague and speculative; there was no foundation for the physician's statements relating his treatment to the collision; the narrative contained unexplained medical terms; the attached medical records were not submitted in narrative form; and the narrative was not presented under oath. Williams also challenged the constitutionality of the statute authorizing the use of medical reports in narrative form in lieu of live testimony, OCGA § 24-8-826. The trial court ruled that certain portions of the narrative,

including the cost of future treatment, were too vague, speculative, and conjectural in nature. The court also ruled that the attached medical records did not fall within the definition of a narrative report and stated that it was concerned with the foundation for the physician's opinion on proximate cause. The court's order did not mention the other issues raised by Williams.

Following the trial court's ruling, Owensby filed a second notice of intent to introduce medical records in narrative form and attached a revised medical narrative, which omitted any estimate of the approximate cost of future medical treatment. The second narrative was submitted without medical records attached. Williams objected and asserted that the second narrative's discussion of the need for future treatment was too inconclusive, speculative, and vague; the new statement that, in the physician's opinion, Owensby is not a malingerer was not appropriate for a medical narrative; and the physician's opinion on causation was not based on first-hand knowledge and was not admissible. The trial court ruled that the second narrative was substantially similar to the first narrative and that certain portions of the narrative were inadmissible as too vague, speculative, and conjectural in nature and could not form the basis of a claim for future medical expenses. The trial court also agreed that the physician's opinion that Owensby is not a malingerer was not appropriate for a

3

medical narrative. Finally, the trial court stated that it was "concerned" about the foundation for the physician's opinion on the issue of proximate cause.

"We review a trial court's decision on the admissibility of evidence under an abuse of discretion standard." *Lott v. Ridley*, 285 Ga. App. 513, 514 (1) (647 SE2d 292) (2007). "An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citation and punctuation omitted.) *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 347 Ga. App. 567, 576 (2) (c) (820 SE2d 197) (2018).

Georgia law allows medical narratives to be used as evidence under certain conditions. Pursuant to OCGA § 24-8-826 (a),

> Upon the trial of any civil proceeding involving injury or disease, any medical report in narrative form which has been signed and dated by an examining or treating licensed physician . . . shall be admissible and received in evidence insofar as it purports to represent the history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations, including the basis therefor, by the person signing the report, the same as if that person were present at trial and testifying as a witness; provided, however, that such report and notice of intention to introduce such report shall first be provided to the adverse party at least 60 days prior to trial. . . . [T]he opinion of the person signing the report with regard to the etiology of the injury or disease may be included as part of the diagnosis. Any adverse party may object to the admissibility

4

of any portion of the report, other than on the ground that it is hearsay, within 15 days of being provided with the report. Further, any adverse party shall have the right to cross-examine the person signing the report and provide rebuttal testimony. The party tendering the report may also introduce testimony of the person signing the report for the purpose of supplementing the report or otherwise.

"The medical narrative shall be presented to the jury as depositions are presented to the jury and shall not go out with the jury as documentary evidence." OCGA § 24-8-826 (b).

Here, in his second medical narrative, Owensby's physician initially set out his qualifications as a licensed medical doctor. He stated that Owensby was first seen approximately six months after the collision and noted that she complained of low back, neck, and shoulder pain. After physically examining Owensby and reviewing her MRI, the physician found what he "believed to be consistent with cervical and lumber facet syndrome." The physician prescribed medication to address her pain, swelling, and muscle spasms. No objections were made to this part of the narrative.

(a) In his discussion of medical treatment, the physician identified what he had determined to be the best course of intervention for Owensby's lower back pain, lumbar intra-articular facet injections, which he described as diagnostic procedures

5

to determine if the facet joint was the source of the pain that could also be therapeutic for this condition. He also described the process for performing the injections. The physician further explained that if relief was obtained after the injection, "a subsequent and more permanent surgery called a medial branch radiofrequency ablation or RFA may be considered for long-term pain relief," and described how the RFA would provide pain relief. The second medical narrative also included a conclusion in which the physician stated that, in his opinion, Owensby's condition would not improve without the recommended treatment, that he believed the procedures would provide her with long term but not permanent relief, and that he anticipated that the procedures would need to be repeated in the future. The trial court ruled that these portions of the narrative were "inadmissible as too vague, speculative, and conjectural in nature," and "too inconclusive to form the basis of a claim for future medical expenses."

OCGA § 24-8-826 (a) provides that a medical report in narrative form "shall be admissible and received in evidence insofar as it purports to represent the history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations, including the basis therefor, by the person signing the report." The portions of the medical narrative ruled inadmissible as too vague, speculative, and

6

conjectural in nature represent the physician's recommended treatment, based on his diagnosis of Owensby's condition, and his prognosis. As a result, they were admissible under OCGA § 24-8-826 (a). See generally *Dalton v. City of Marietta*, 280 Ga. App. 202, 204 (1) (633 SE2d 552) (2006) ("So long as medical narrative reports express the relevant information in prose language that is more readily understandable to laymen, they are admissible.") (citation and punctuation omitted).[2]

(b) The second medical narrative also included the physician's opinion that "Owensby is not a malingerer. Throughout her treatment and recovery, I believe that she experienced real pain in her neck, back and shoulder." The trial court excluded these statements based on its conclusion that they did not relate to Owensby's history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations. We conclude that the trial court misapplied the relevant law on this issue. The contested statements were made after the physician had examined Owensby and were admissible as his interpretation of that examination. See OCGA § 24-8-826 (a); see also *Wildstein v. Gray*, 146 Ga. App. 222, 223 (2) (246 SE2d 130) (1978) ("Whether appellant was feigning injury was a relevant query, and expert

_____

[2] *Dalton* was decided under former OCGA § 24-3-18, which is virtually identical to OCGA § 24-8-826.

7

testimony relative thereto was properly admitted over a relevancy objection."); *General Gas Corp. v. Whitner*, 110 Ga. App. 878, 879 (4) (140 SE2d 227) (1965) (trial court did not err in permitting physicians to respond to the question "whether they observed anything about the plaintiff that would indicate he was a malingerer," over objection that such testimony would be a conclusion of the witness and invade the province of the jury); *Tifton Brick & Block Co. v. Meadow*, 92 Ga. App. 328, 333 (5) (88 SE2d 569) (1955) (testimony of physician that the witness did not give "any evidence of being a malingerer" was admissible).

(c) As the basis for the physician's opinion and recommendation, the second medical narrative states:

> Owensby treated for pain as a result of a motor vehicle collision on 10/12/2016. I personally provided medical treatment to . . . Owensby for symptoms and injuries that were directly and proximately caused by the motor vehicle collision [in which] she was involved. I have a first-hand account of this patient and her symptoms.

The trial court's order states that the court is "concerned with the foundation of [the physician]'s opinion expressed on the ultimate issue of proximate causation," but fails to make a specific ruling on this issue.

8

"[A]n appellate court is, among other things, a court for the correction of errors of law," and "[a]n error of law has as its basis a specific ruling made by the trial court." (Citation and punctuation omitted.) *City Of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002). Because there has been no definitive ruling by the trial court on this issue, there is no ruling to review for legal error. See id; see also *Findley v. City of Atlanta*, 345 Ga. App. 649, 652 (2) (814 SE2d 781) (2018) (when the trial court has not ruled on an issue, we will not address it). This issue must be resolved before the second medical narrative can be admitted, and we therefore remand the case for the trial court to make a definitive ruling on this issue that can be reviewed if necessary.

*Judgment reversed and case remanded. Dillard, P. J., and Brown, J., concur.*